JOSEPH L. SPOFFORD, Individually, etc., Appellant, v. PAULINE S. PEARSALL et al., Respondents.

S., by his will, after creating certain trusts for the benefit of his children, gave to his widow a life estate in one-fourth of his residuary estate, with power to appoint and transfer the *corpus* of the share to any of his children during her life or by will. Three sons of the testator S. and the widow were appointed executors; they took possession of his estate and used the assets in their private business. The widow died leaving a will, by which she constituted two trust funds of $150,000 each for the benefit of two sons, J. and G. The will provided that the net income from each fund should be applied to the use of the beneficiary named; also that each should bear interest from the death of the testatrix, at the rate of seven per cent per annum, "up to the making up or creation of the trust fund," to be paid from her general estate, and to be "disposed of in like manner as if it had been income accrued from the trust fund after the making up and investment of the same." In case her own property was insufficient to make up the two funds, the testatrix appointed and directed that sufficient should be taken from the one-fourth of her husband's estate, over which she had the power of appointment, to make up the same, "with the interest thereon as aforesaid;" her individual estate was about $50,000. G. thereafter died. Pending an action for an accounting by the surviving executors, the parties interested entered into an agreement of settlement. Up to that time none of the trusts created by either of the wills had been established by the setting aside of funds therefor. It was claimed in said action that the shares of J. and G. in their father's residuary estate had been fully withdrawn by them and that the widow, during her lifetime, had exercised the power of appointment and had no power to make disposition by will of any part of her husband's estate, and so that the provisions therein for J. and G. were void. By the said agreement it was provided that said executors would

make no opposition to the contention that the shares of J. and G. in their father's residuary estate had been withdrawn by them; that the parties would co-operate in effecting a compromise with a daughter, the sole heir and next of kin of G., so that instead of payment of "the full amount of the trust fund of $150,000 and interest" mentioned in the will of her grandmother, that sum should be reduced to $50,000, and in case this was accomplished no opposition would be made to the entry of judgment in the action directing that the sum of $150,000 should be invested and held as a trust fund for the benefit of J., as provided by his mother's will. It was also provided that "out of the amount of income which will become due to him under the will," and his share of the estate of a deceased brother, J. would pay to the trustees of a share held for the benefit of a sister under the will of his father, the sum of $75,000. Also, that "no claim shall be made by any of the parties to this suit for arrears of interest or income upon any of the trust funds created" by said will. *Held,* that under the agreement J. relinquished all claim for accrued interest or income on the $150,000 trust fund to be held for his benefit, and so that no interest could be charged thereon prior to the date of the agreement; that the true meaning of the agreement was that the $75,000 to be paid by J. to his sister should be paid out of his share in the estate of his deceased brother and out of the interest which should thereafter accrue on said trust fund.

(Argued March 14, 1893; decided April 11, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 12, 1891, which affirmed a judgment entered upon the report of a referee.

This was an action for an accounting of the surviving executors of the estate of Paul Spofford, deceased.

The question on this appeal relates to the true construction of the sixth article in an agreement of settlement made between the parties June 6, 1891. When the agreement was signed by the appellant Joseph L. Spofford, the suit for the accounting had been on trial before a referee for a year or more, and a large mass of evidence had been taken. It was brought by Paul N. Spofford and the appellant, Joseph L. Spofford, individually and as surviving executors of Paul Spofford, for an accounting by them as such executors, and for a final settlement of the estate. All the parties in interest were made defendants, viz. : the surviving children of Paul

Spofford (other than the plaintiffs), the representatives of deceased children and the executors of the estate of Susan Spofford, the widow of Paul Spofford.

Paul Spofford left a large real and personal estate. He died in 1869, and by his will constituted his three sons, Paul N., Joseph L. and Gardiner S., together with his wife Susan Spofford, executors and trustees. By his will he created six trust funds of $50,000 each, one for the benefit of each of his six children for life, with limitations over. He gave to his wife a life estate in one-fourth part of his residuary estate, with power to appoint and transfer the *corpus* of the share to any of his children during her life, or by her will. The remaining three-fourths of his residuary estate he gave in shares of one-sixth part each, one to each of six children. The share of his son Paul N., he gave to him absolutely. The shares of the four other sons he gave in trust, with power to each to withdraw his share at a certain age, and the share of the daughter, Mrs. Pearsall, was also given in trust, with a limited power of withdrawal.

Susan Spofford, the widow, died in 1886. She had qualified as executrix of her husband's will, with her three sons. She left an individual estate of about $50,000. By her will she constituted two trust funds of $150,000 each, one for the benefit of her son Gardiner S., during life, with limitations over, and one for the benefit of her son Joseph L. (appellant), of similar character. The will provided that the income from the respective funds, after paying taxes and other proper charges thereout, should be applied to the use of the beneficiaries respectively. The two trusts were created by separate clauses in the will, and each clause contains this provision :

" I will and direct that the bequest of one hundred and fifty thousand dollars, above made by this second article of my will, shall bear interest from my death, at the rate of seven per cent per annum, which interest from the time of my death up to the making up or creation of the trust fund or the portions thereof from time to time made up or created, being paid from my general estate, shall be applied and disposed of in

like manner as if it had been income accrued from the trust fund, after the making up and investment of the same."

The testatrix, in a subsequent clause of her will, referring to the power of appointment given to her in the will of her husband, declared: "In case my own property shall not suffice to meet and pay in full the two bequests of one hundred and fifty thousand dollars each, bearing interest from my death, in trust for the benefit of my sons Joseph and Gardiner respectively, as provided by the second and third articles of this my will, I will, appoint, devise, bequeath and direct that there shall be taken and appropriated from the said one-fourth share of the residue of my husband's estate, over which I have the power of appointment aforesaid, such amount thereof as shall be equal to such deficiency of my own estate, to meet and pay the said two bequests of one hundred and fifty thousand dollars each, with the interest thereon as aforesaid."

The testatrix appointed the remainder of the said one-fourth share of her husband's estate among each of her four children, one of the shares being appointed in trust for her son Joseph on the same trusts and with the same limitations as were provided in the trust of $150,000, before mentioned. She also devised her individual residuary estate in the same way, the share of ,Joseph being placed in trust, as in the other cases.

Gardiner S. Spofford died intestate January 22, 1887, leaving issue surviving. Eugene W. Spofford, also one of the sons of Paul Spofford, died August 23, 1887, without issue, and leaving a will giving to his brother Joseph L., one-third of his residuary estate.

Recurring now to the proceedings on the accounting of the executors of the estate of Paul Spofford, in this action, prior to the agreement of settlement of June 6, 1891, and the situation at that time, it may be stated in general terms that it had been shown that the three sons, Paul N., Joseph L. and Gardiner, and the widow, Susan Spofford, the executors of Paul Spofford, immediately upon his death in 1869, took possession

of his estate. The sons used the assets in discharging the obligations of the testator and in their own private business. They drew large sums on account of their interest as legatees under the will, and much larger amounts in the aggregate than they paid to their two younger brothers, or their sister, on account of their shares, which were equal with those of their brothers, the executors. The appellant, Joseph L. Spofford, drew the sum of $177,166.66, and his brothers, Paul N. and Gardiner, still greater sums. Eugene W. Spofford received only $31,972.20, Edward Clarence Spofford $62,-290.66, and the sister, Mrs. Pearsall, $83,097.91; but she was chargeable with an advancement made in the lifetime of her father, of $50,000.

The referee found that in addition to the cash sums above mentioned, the three sons, Paul N., Joseph L. and Gardiner, were chargeable with large sums belonging to the estate, which were applied by them to their individual use and benefit, but that accurate accounts were not kept, and that it is not now practicable to ascertain precisely to what extent moneys of the estate were so applied and used. He further found that the accounts presented showed that the three sons were indebted to the estate in the sum of $486,421.93. No inventory of the estate was ever filed.

On the accounting it was claimed by the other parties in interest that Paul N., Joseph L. and Gardiner Spofford had withdrawn their whole interest in the residuary estate of Paul Spofford, their father, and were entitled to nothing in the distribution. It was also claimed that Susan Spofford had during her lifetime exercised the power of appointment given her by the will of Paul Spofford, and had transferred the whole of the one-fourth part of the residuary estate, or had so dealt with the estate in her lifetime as to deprive her of the power to dispose of the one-fourth part of his estate by her will, and that, therefore, the provisions in her will creating the trust funds of $150,000 each for the benefit of her sons, Gardiner and Joseph L., out of the estate of her husband, could not be enforced, and that neither Joseph L nor the representa-

tives of Gardiner were entitled to have any appropriation made out of his estate, for either the principal or interest of their trusts. There was the further contention that the sons, Paul N., Joseph L. and Gardiner, had received much more than the other children out of the estate, although the shares were equal. These contentions were disputed by Paul N. and Joseph L. Spofford (the appellant), and by the representatives of Gardiner S.

The estate of Paul Spofford, under the control of the executors and trustees at the time of the accounting, consisted almost wholly of real property in the city of New York. Up to the time of the execution of the agreement of settlement of June 6, 1891, none of the trusts created by the will of Paul Spofford, or of Susan Spofford, had ever been established by the setting apart of funds from either estate. The material articles in the agreement of settlement of June 6, 1891, are as follows:

"2. The plaintiffs shall make no opposition to the contention on the part of the subscribing defendants that the shares of Joseph L. Spofford and Gardiner S. Spofford in the residuary estate of the said Paul Spofford have been already fully withdrawn by them, and that Paul N. Spofford has already received his share of said residuary estate.

"3. The plaintiffs will co-operate with the subscribing defendants in effecting a compromise with Adelaide T. Spofford and her guardian, so that instead of the full amount of the trust fund of $150,000 and interest, mentioned in the will of Susan Spofford, being paid to her or her guardian, such amount shall be reduced to $50,000. If this compromise, or a compromise satisfactory to the subscribing parties, cannot be effected, this agreement shall be inoperative and of no effect.

"4. The foregoing provisions of this agreement being complied with, the subscribing defendants will not oppose the contention of the plaintiffs that the sum of $150,000, which by the will of Susan Spofford is made a trust fund, the income of which is to be applied for the benefit of Joseph L. Spof-

ford during his lifetime, shall be directed by the judgment herein to be paid over to his trustee and be invested and held as directed by said will.

" 6. Out of the amount of the income which will become due to him to date under the will of Susan Spofford and out of his share of the estate of Eugene Spofford, Joseph L. Spofford will pay to the trustees of the share, the income of which is payable to Mrs. Pearsall for life under the will of Paul Spofford, the sum of $75,000 for the purpose of equalizing to her and to her children any inequality in the distribution of the estate already effected.

" 12. No claim shall be made by any of the parties to this suit for arrears of income or interest upon any of the trust funds created by any of the wills mentioned in the complaint.

" 13. For the purpose of securing full payment of all moneys which may become due and payable from Joseph L. Spofford under this agreement, Joseph L. Spofford will forthwith execute a conveyance of all his interest under the will of Eugene W. Spofford to Thomas T. Sherman in trust, who shall be authorized out of any moneys received by him under such conveyance to make, and who shall make out of such moneys all payments herein agreed to be made by Joseph L. Spofford ; the surplus after such payments are made shall be returned to Joseph L. Spofford."

On the settlement of the judgment the appellant, Joseph L. Spofford, claimed that under the stipulation he was entitled to a direction that the sum of $53,025, the amount of interest at seven per cent on $150,000, from the time of the death of Susan Spofford, should be paid out of the estate of Paul Spofford and applied toward the payment of $75,000, to be made to his sister, Mrs. Pearsall, under the sixth article of the stipulation. The referee denied the claim of the appellant.

Other facts are referred to in the opinion.

*Treadwell Cleveland* for appellant. The agreement of compromise in terms supports the construction contended for by the appellant. All parts of the agreement must be consid-

ered. It must be read as a whole and effect given to each part. Inconsistent clauses, if any, must be reconciled as far as possible, and the court must not reject any word or provision, if it is possible to reconcile it with the others. General words should, when necessary, be made to yield to those of narrower import; and, in accordance with an ancient and well-settled rule, the later of two inconsistent or repugnant clauses must ordinarily yield to the earlier. (Bishop on Cont. § 384; *Holmes* v. *Hubbard*, 60 N. Y. 183 ; 1 Chitty on Cont. [11th ed.] 128.) The trust deed to the defendant Sherman, executed pursuant to the thirteenth clause, is not important, for, following the requirements and language of the agreement, it leaves the question precisely where it rested originally — upon the terms of the agreement. (Bishop on Cont. § 407.) Assuming, however, for the sake of argument, that the sixth and twelfth clauses are apparently inconsistent and repugnant, as the defendants contend, the appellant's is still the only proper and legal construction, and the twelfth clause must yield to the sixth. (Bishop on Cont. § 406 ; *Hoey* v. *Gilroy*, 129 N. Y. 132; Sutherland on Stat. Const. § 217.)

*Thomas G. Shearman* for respondents. Assuming, for the sake of argument, that there is evidence, or a finding that there was, at the date of the compromise agreement, any amount due to anyone under this provision, it plainly was not due to Joseph L. Spofford. On the contrary, the express terms of the will require it to be paid to his trustee, and applied by him to Joseph's "actual, personal and beneficial use;" and Joseph has no power to anticipate or incumber it in any way. (*W. R. R. Co.* v. *Nolan*, 48 N. Y. 513 ; *In re Straut*, 126 id. 201.)

*Jacob Halstead* for Edward C. Spofford, respondent. The whole agreement of compromise must be considered in determining the meaning of any or all of its parts. (2 Pars. on Cont. [5th ed.] 501.)

*William Pierrepont Williams* for executors, respondents.

Andrews, Ch. J.    I shall briefly state the reasons which, in my opinion, justify the affirmance of the judgment below.

The matter in controversy relates to the true construction of the sixth article in the agreement of settlement, dated June 6, 1891. It is claimed by the appellant that by that article he is entitled to have paid to him or for his benefit from the residuary estate of Paul Spofford, interest at the rate of seven per cent on the trust fund of $150,000 created by the will of his mother, Susan Spofford, from the time of her death on the 18th day of May, 1886, to the date of the agreement of settlement, amounting to $53,025. Or, to state the contention in another form, it is that by the agreement the trust fund of $150,000, created by Susan Spofford's will, was recognized and established as a valid charge on the residuary estate of Paul Spofford, together with all the incidents as expressed in her will, including the declaration that from the time of her demise up to the making up or creation of the trust fund, the bequest "should bear interest at the rate of seven per cent per annum." The claim on the part of the respondents is that by the true meaning of the agreement the residuary estate of Paul Spofford was to be charged only with the capital sum of $150,000, and that the appellant relinquished all claim for income or interest up to the date of the agreement.

The appellant contends that the sixth article of the agreement contains a clear and unambiguous expression of the intention of the parties to charge the estate of Paul Spofford for the benefit of Joseph L. Spofford with the payment of the back interest on the trust fund of $150,000, from the time of the death of Susan Spofford, as well as the principal. But the language of the sixth article is certainly inapt if this was the intention. The provision in Mrs. Spofford's will required that interest should be paid at the rate specified until the trust fund should be established, to be applied "as if it had been income." The interest which was temporarily to take the place of income was not in law or fact income. The only income which by the terms of Mrs. Spofford's will was directed to be paid or applied to the use of the beneficiary of

the trust was income accruing from time to time from the trust fund. It is also to be observed that the language of the sixth article is future, viz.: "income which will become due," and income thereafter accruing from the trust fund would be income coming "under the will of Susan Spofford." The strong point in favor of the appellant's contention arises out of the use of the words "to date," the language of the clause being "out of the amount of the income which will become due to him *to date* under the will of Susan Spofford," etc. If the words "to date" refer to the date of the agreement, which, it must be admitted, is the natural interpretation, the argument that the income referred to was income which had already accrued, and not income which should thereafter accrue, seems unanswerable. But in interpreting the 6th article, all provisions of the agreement may be considered, and if it shall be found in such examination that the interpretation claimed is repugnant to the scheme of the settlement and to other parts of the instrument, and is opposed to the paramount intention, as disclosed by the agreement as a whole, then the court is to seek an interpretation which shall reconcile the particular clause with such general purpose. The court is not permitted to reject any clause of an agreement for repugnancy, except when the repugnancy is absolute and irreconcilable. It is important in this connection to consider what was sought to be accomplished by the agreement of June 6, 1891. The primary and controlling object was to settle a family difficulty by a voluntary settlement, which should ascertain and definitely establish the rights of the parties interested in the estate of Paul Spofford. The estate had, as may be inferred, suffered large losses, and been depleted by the acts and negligence of the executors. The executors had taken from it by way of advances on their shares much more than had been paid to their brothers and sister. The agreement was made to settle the contentions which had arisen between the children of the testator. One of the contentions was that the three eldest sons had received all they were entitled to out of the estate of Paul Spofford. It was also claimed

that the two trust funds of $150,000 each, created by the will of Susan Spofford for the benefit of her sons, Gardiner S. and Joseph L., could not be taken out of the estate of her husband under the appointments in her will, for the reason that she had disabled herself to make such appointments by her dealings with the estate in her lifetime. The agreement of June 6, 1891, was made to finally adjust these and other controversies. It would naturally be expected, therefore, that the rights and interests of the respective parties in the property remaining, and especially of the sons who had been executors, and whose conduct was called in question, would be distinctly defined and limited.

By the first article of the agreement the sons, Paul N. Spofford and Joseph L. Spofford, were to resign as executors and trustees under their father's will, and by the fifth article they were to make no claim for commissions. By the second article they admitted that they had severally received their share of the residuary estate of Paul Spofford. The third article relates to the settlement of the rights of the daughter of Gardiner S. Spofford, and it was declared that she was to receive out of the estate of Paul Spofford the sum of $50,000 in full on account of the trust fund of $150,000 created for the benefit of her father in the will of Susan Spofford. The fourth article of the agreement is very significant in respect to the point in controversy. It deals with the trust provision of $150,000 for the benefit of Joseph L. Spofford contained in the will of Susan Spofford, and is the sole provision in the agreement which directly authorizes an appropriation out of the estate of Paul Spofford for the purposes of that trust. That appropriation is of the sum of $150,000, the capital of the trust, and the article makes no appropriation for the payment of the large sum of $53,025, for back interest now claimed by the appellant. It declares that the subscribing defendants will not oppose the contention of the plaintiffs "that the sum of $150,000, which by the will of Susan Spofford is made a trust fund, the income of which is to be applied for the benefit of Joseph L. Spofford during his life-

time, shall be directed by the judgment herein to be paid over to his trustee and be invested and held as directed by said will." It is quite remarkable if the additional claim for interest was also intended to come out of the general estate, it should not have been provided for in this article. The contention on the one side had been that both the principal and interest on this trust fund should be a charge on the general estate, and on the other that neither the principal nor interest should be so charged. When the parties came in their settlement to deal with this question, they provided for the payment of the principal alone. The sole ground for now insisting that the parties intended that the interest should also be paid, rests upon an inference from the 6th article, which deals alone with a duty to be performed by the appellant towards his sister, for the purpose of equalizing the advances made to them respectively.

The 12th article if it stood alone would be conclusive against the claim of the appellant. I quote it in full : " 12. No claim shall be made by any of the parties to this suit for arrears of income or interest upon any of the trust funds created by any of the wills mentioned in the complaint." There is no doubt of the general rule, applicable alike to the construction of contracts and statutes, that where a general intention is expressed and also a particular intention incompatible with the general intention, the particular intention may be considered in the nature of an exception. (*Churchill* v. *Brease*, 5 Bing. 178 ; *Hoey* v. *Gilroy*, 129 N. Y. 138.) But it seems to have been the specific intention of the 12th article, construing the article with reference to the wills to which it refers, to exclude any claim for back interest on the trust fund of $150,000. The article relates to all the trust funds under the wills, either of Paul Spofford or Susan Spofford, as both are set out in the complaint. There were no trust funds under the will of Susan Spofford, except those created for the benefit of Joseph L. Spofford and Gardiner S. Spofford. Indeed, the only strictly " trust funds " mentioned in her will were the two funds of $150,000 each. Mrs. Spofford also

gave to each of these two sons a share in the one-fourth part of her husband's estate, after carving out the two funds mentioned, and also a share in her residuary individual estate. But these shares in both cases were given in trust, and as has been said, no other trusts were created by her will except for the benefit of her sons Gardiner S. and Joseph L. The twelfth article could, therefore, have no meaning so far as it related to the trusts under Susan Spofford's will, unless it was intended to cut off any claim to back interest on the part of the two sons. The use of both the words "interest" and "income" is significant. The word "interest" has no appropriate application except to the trust fund of $150,000. Moreover, the whole claim of the issue of Gardiner S. Spofford under the trust in his favor, including interest, was as contemplated by the 3d article to be fixed at $50,000. It would seem, therefore, that the reference in the 12th article to back interest, upon the trust funds under the will of Mrs. Spofford, referred primarily to the trust fund in favor of Joseph Spofford. Referring again to the 6th article, it will be seen that its primary purpose was to impose upon Joseph L. Spofford an obligation to pay to his sister, Mrs. Pearsall, $75,000 for equality of division, which presumably was fixed upon as the sum he had received from the estate beyond what he was entitled to receive as between himself and his sister. Under the 4th article he would become entitled to the income which would thereafter accrue on the trust fund of $150,000. I think in view of all the circumstances the true meaning of the 6th article is that Joseph L. Spofford should pay to Mrs. Pearsall the sum of $75,000 out of his share in the estate of his brother Eugene and out of income which should accrue to him on the trust fund of $150,000, established by the 4th article, up to the date of the payment of the debt, and he appropriated both resources for that purpose. This construction is not free from difficulty, but it harmonizes all the provisions of the agreement, and it is reached, I think, with less embarrassment than attends the construction claimed by the appellant.

The 13th article lends force to the view here taken. But without more extended discussion, in view of the able opinion at General Term, I conclude the consideration of the case.

The judgment should be affirmed, with costs.

All concur, except EARL, J., not voting.

Judgment affirmed.