FREDERICK O. BECKER, Respondent, *v.* PETER A. FRASSE & Co., INC., Appellant.

(Argued October 17, 1930; decided November 18, 1930.)

*John J. Halpin* and *Joseph W. Kirkpatrick* for appellant. If the agreement does not clearly show that plaintiff is not entitled to receive any part of the refund of taxes it is ambiguous and equivocal in its terms and plaintiff has failed to show that it was the intention by said

agreement to cover taxes which were refunded and credited by the Federal government to defendant but had not yet been actually paid to it. (*Westcott* v. *Higgins*, 42 App. Div. 69; 169 N. Y. 582; *Woolverton* v. *Johnson*, 69 Kans. 708; *Hitchings* v. *Van Brunt*, 38 N. Y. 335; *Matter of Poonarian*, 234 N. Y. 329; *Ireland* v. *Corse*, 67 N. Y. 343; *Adams* v. *Bristol*, 126 App. Div. 657; 196 N. Y. 510; *White* v. *Case*, 13 Wend. 543; *Elbald* v. *Hanson*, 85 Kans. 541; *Hubbell* v. *Board of Commrs. of Bernalillo County*, 13 New Mex. 546; *Iliff* v. *Weymouth*, 40 Ohio St. 101; *Ryan* v. *Tudor*, 31 Kans. 366; *State of Missouri* v. *Moeller*, 48 Mo. 331; *Yazoo & M. V. R. Co.* v. *Fitzgerald*, 137 Miss. 905; *Taylor* v. *Kearney County*, 35 Neb. 381; *McInerny* v. *Reed*, 23 Iowa, 410; *Pottawattamie County* v. *Carroll County*, 67 Iowa, 456.) The evidence clearly establishes that the parties did not intend to include in the contract the refunds of overpaid taxes for the fiscal year ending November 30, 1918, for the sale of plaintiff's stock to the defendant was predicated on the book value of the stock as shown by an audit of the defendant's books which included therein to plaintiff's knowledge the refund of taxes for the year 1918. (*Hamburg* v. *Cundill*, 247 N. Y. 119; *Sun Oil Co.* v. *Heller*, 248 N. Y. 28; *Matter of Oakes*, 248 N. Y. 280; *Good* v. *Martin*, 95 U. S. 90; *Union Trust Co. of N. Y.* v. *Whiton*, 97 N. Y. 172; *Dent* v. *North American S. S. Co.*, 49 N. Y. 390; *Thomas* v. *Scutt*, 127 N. Y. 133; *Middleworth* v. *Ordway*, 191 N. Y. 404; *Martin* v. *Mfrs. Acc. Indemnity Co.*, 151 N. Y. 94; *Mullen* v. *Washburn*, 224 N. Y. 413; *Atterbury* v. *Bank of Washington Heights*, 241 N. Y. 231; *U. S. Printing & Lithographing Co.* v. *Powers*, 233 N. Y. 143; *Kenyon* v. *K. T. & M. M. A. Assn.*, 122 N. Y. 247; *Lamb* v. *Norcross Bros. Co.*, 208 N. Y. 427; *Murdock* v. *Gould*, 193 N. Y. 369.)

*Robert H. Wilson, Jr.*, for respondent. The agreement on its face expresses an entire and complete agreement

between the parties, and is not in any sense ambiguous. (*Thomas* v. *Scutt*, 127 N. Y. 133; *Stowell* v. *Greenwich Ins. Co.*, 163 N. Y. 298; *Brantingham* v. *Haff*, 174 N. Y. 52; *Mead* v. *Dunlevie*, 174 N. Y. 108; *Lossing* v. *Cushman*, 195 N. Y. 386; *Lese* v. *Lamprecht*, 196 N. Y. 32; *Allen* v. *City of Oneida*, 210 N. Y. 496; *Cream of Wheat Co.* v. *Grist Co.*, 222 N. Y. 487; *Edison* v. *Thacher*, 229 N. Y. 172; *Matter of Loew's Buffalo Theatres, Inc.*, 233 N. Y. 495; *Ayers* v. *Palatine Insurance Co.*, 234 N. Y. 334; *St. Regis Paper Co.* v. *Hubbs*, 235 N. Y. 30; *Brainard* v. *New York Central R. R. Co.*, 242 N. Y. 125; *Newburger* v. *American Surety Co.*, 242 N. Y. 134; *Ruppert* v. *Singhi*, 243 N. Y. 156; *Mitchill* v. *Lath*, 247 N. Y. 377; *Heller* v. *Pope*, 250 N. Y. 132.)

CARDOZO, Ch. J.   Plaintiff, who was the treasurer of Peter A. Frasse & Company, Inc., sold to the defendant 1,100 shares of the defendant's corporate stock at the price of $80 a share.

In connection with the sale he received from the defendant the following letter:

" *January* 9, 1925

" Mr. F. O. BECKER,

" 99 Hancock St., Brooklyn, N. Y.

" DEAR SIR:   In the event that Peter A. Frasse & Co., Inc., collect after this date any further refund from the Government for excess payment of income tax paid to January 1st, 1925, it is agreed upon your sale to the company of eleven hundred (1100) shares of common stock at $80.00 per share, that the company will pay you if and when such refund is collected from the Government eleven-sixtieths (11/60) of the net amount of the refund collected, after deducting expenses for such collection.

" Yours very truly,

" PETER A. FRASSE & CO., INC.,

" LESTER BRION,

" *President*."

During the negotiations leading up to the sale, the parties had before them an audit of the books dated June 30, 1924, with which the plaintiff as treasurer of the corporation was thoroughly familiar.

This audit included as part of the surplus an item of $32,983.86, described as a United States income tax refund for the year 1918–1919.

This refund had been allowed by the United States Treasury Department by notice to the defendant in March, 1924. Of the refund thus allowed there was paid in cash to the defendant on June 16, 1924, the sum of $15,435.40. The residue though allowed had not been paid at the date of the audit. Even so, the full amount was included as part of the surplus and was classified as a refund actually made. At the time of the sale (January, 1925) the situation was unchanged. The balance with accrued interest, amounting to $18,414.49, was paid to the defendant on February 19, 1925, after the sale had been made and the certificates delivered.

The refund of taxes for 1918 was the only one that had been allowed when the bargain was in progress, but it was not the only one in view. There were other applications for refunds then pending and undetermined. Some of these were allowed afterwards, though for comparatively small amounts, and in every such instance the defendant paid to the plaintiff the part due to him under the contract out of the moneys so received.

This action is brought to recover a proportionate share of $18,414.49, the sum paid by the Government in February, 1925, on the ground that it is a further refund within the meaning of the contract.

The trial judge, construing the refund agreement in the light of the circumstances, held that the "further refunds" there referred to did not include the payment of moneys upon a refund already allowed by the Government and treated by the corporation as a cash item, but must be confined to other refunds, the subject of claims then pending and undetermined.

The Appellate Division held that the agreement was so clear as to give no opportunity for construction, and that all refunds paid thereafter, even though previously allowed by the Government, and treated as a cash asset, were due to the plaintiff as soon as received by the defendant. The judgment for the defendant was reversed, and judgment ordered for the plaintiff.

We think a construction so literal does violence to intention.

The rule has often been declared that a contract is to be read in the light of the circumstances existing at its making, and that these may avail to stamp upon a word or phrase a loose or secondary meaning as distinguished from the strict or primary meaning to be gathered from the instrument unenlightened by extrinsic aids (*Utica City Nat. Bank* v. *Gunn*, 222 N. Y. 204, 208; *Atwater & Co.* v. *Panama R. R. Co.*, 246 N. Y. 519, 524; *Kenyon* v. *Knights Templar & M. M. A. Assn.*, 122 N. Y. 247; *Lamb* v. *Norcross Bros. Co.*, 208 N. Y. 427).

The plaintiff himself testifies that he asked the defendant's representative, the chairman of the board of directors, to· capitalize the amount that was to come from the Government, and to add it to the price, and that the chairman refused to do this because " he did not know how much it would be." That statement was true, of course, as to claims for refunds then pending, but plainly it was not true of claims already allowed and set up for the full amount as a cash asset of the company.

The defendant knew exactly how much this item was to be, and there is no reason to suppose that it was suspicious of the credit of the United States Government. Indeed, the contrary is distinctly proved by the fact that the item as soon as allowed was treated as a constituent of the surplus and was so recorded in the books. What was known to the defendant was as fully known to the plaintiff. The surplus, with the refund in it, entered into the estimate of value, and is reflected in the rate of $80 per share to be paid upon the sale.

In the light of the then existing circumstances the promise to pay an additional sum in the event that the defendant should collect "any further refund," may fairly be held to have referred to a refund allowed thereafter, and not to one classified as already a finality. In the thought of the parties to the contract, the claim for a refund on account of the taxes for 1918 was no longer future or contingent. Even though the money had not been paid in full, the refund was recognized as an accomplished fact. There remained only the physical act of payment as distinguished from the pressure and persuasion implicit in the process of collection. What was open was not a "further refund" as buyer and seller must have viewed it when higgling as to price. At least, the contract is ambiguous, and reasonably supports the meaning ascribed to it by the seller.

Other entries in the balance sheet give aid to this conclusion. Included in the audit is an item, "accounts receivable, $155,106.79." This item, to the extent of the unpaid balance of $18,414.49, was made up of the refund allowed for 1918. Accounts receivable in general were treated as present assets without waiting for actual payment. No reason is suggested why this should have been done in respect of accounts receivable owing from debtors generally, and refused as to an account receivable due from a debtor so solvent as the Government.

The contract has meaning and rationality if confined to claims for tax refunds then pending and undetermined. It is without sensible purpose if extended to a refund which had been dealt with as a present asset.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed with costs in the Appellate Division and in this court.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.