Lucia R. Bristol, Individually and as Executrix of the Last Will and Testament of George P. Bristol, Deceased, Plaintiff, *v.* Cornell University, Defendant.

Supreme Court, Tompkins County, July 18, 1932.

416

*William Hazlitt Smith* [*H. C. Stratton* of counsel], for the plaintiff.

*Mynderse Van Cleef* [*Allan H. Treman*, *J. F. O'Connor* and *Leo N. Simmons* of counsel], for the defendant.

McNAUGHT, J. The rights of the parties must be determined by a construction of the original lease of 1892. The continuance of the lessee in possession subsequent to the expiration of the thirty-year period continued, as an elementary principle of law, the provisions of the instrument under which he went into possession. The rights of the plaintiff are governed by the provisions of such agreement.

The issue must, therefore, be determined by a construction of the two paragraphs of the lease which are in dispute, the plaintiff contending that under the subsequent paragraph, termed for convenience " Y," she is entitled to recover the full appraised value of the buildings erected upon the premises, the defendant contending that under the provisions of the paragraph termed for convenience " X," the plaintiff is entitled to recover the fair and just value of the building, not exceeding $5,000, the limitation specified in such paragraph.

There is some dispute in the testimony as to the details of the continuance of the lease, but it must be found as a fact that Prof. Bristol in his lifetime, and the plaintiff subsequent to his death, continued in possession under the lease of 1892, and its provisions govern the rights of the plaintiff in this action.

" Contracts are not to be interpreted by giving a strict and rigid meaning to general words or expressions without regard to the surrounding circumstances or the apparent purpose which the parties sought to accomplish." (*Robertson* v. *Ongley Electric Co.*, 146 N. Y. 20, 24; *Gillet* v. *Bank of America*, 160 id. 549, 556.)

" The court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought." (*Atwater & Co.* v. *Panama R. R. Co.*, 246 N. Y. 519, 524.)

" The rule has often been declared that a contract is to be read

in the light of the circumstances existing at its making, and that these may avail to stamp upon a word or phrase a loose or secondary meaning as distinguished from the strict or primary meaning to be gathered from the instrument unenlightened by extrinsic aids." (*Becker* v. *Frasse & Co.*, 255 N. Y. 10, 14.)

" In construing a contract the whole instrument must be considered and from such consideration a conclusion reached as to what the parties intended to do or sought to accomplish. ( *Koles* v. *Borough Park Co.*, 142 App. Div. 765, 769.) That interpretation is favored which will make every part of a contract effective." (*Fleischman* v. *Furgueson*, 223 N. Y. 235, 239.)

" Under well established rules the instrument is to be construed as a whole, and effect is to be given to every word or expression contained in it where there is no irreconcilable conflict." ( *Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310, 322.)

" The court is not permitted to reject any clause of an agreement for repugnancy, except when the repugnancy is absolute and irreconcilable." (*Spofford* v. *Pearsall*, 138 N. Y. 57, 66.)

The defendant prepared, as is manifest, the contract, the interpretation of which is in dispute. It is a well-established principle that if there is any uncertainty or ambiguity as to the meaning of such an agreement, it should be resolved against the party preparing and presenting the instrument. Where a doubt exists as to the meaning of words employed, resort may be had to the surrounding facts and circumstances to determine the meaning intended. If the language of a promise may be understood in more senses than one, it is to be interpreted in the sense in which the promisor had reason to believe it was understood. (*White* v. *Hoyt*, 73 N. Y. 505; *Gillet* v. *Bank of America*, *supra*, 554, 556; *Marshall* v. *Com. Travelers' Mut. Acc. Assn.*, 170 N. Y. 434, 436; *Moran* v. *Standard Oil Co.*, 211 id. 187, 196.)

The courts always avoid, if possible, any construction of a contract that is unreasonable or inequitable, and especially one that will place one of the parties at the mercy of the other. Equity looks through the form to the substance and purpose of the agreement and molds its decree in accordance with what the parties may fairly be presumed to have intended. (*Simon* v. *Etgen*, 213 N. Y. 589, 595.)

" We must look to the contract as a whole, to the subject with which it deals, to the circumstances under which it was made and thereby determine the true intent and purpose of the parties, and if such intent and purpose is reasonably within the scope of the language used it must be taken to be a part of the contract the same as if it were plainly expressed. Indeterminate forms of

expression inconsistent with the evident design of a contract are to be understood in a sense subservient to the general purposes of the contract. The generality of the words used should be restrained by the particular occasion." (*People ex rel. N. Y. C., etc., R. R. Co.* v. *Walsh,* 211 N. Y. 90, 100.)

" If the parties to a contract adopt a provision which contravenes no principle of public policy and contains no element of ambiguity the courts have no right to relieve one of them from disadvantageous terms which he has actually made, by a process of interpretation." (*Rosenthal* v. *American Bonding Co.,* 207 N. Y. 162, 168.)

Applying to the controversy before us those established principles of law, we may first inquire what was the purpose and intention of the parties. Evidently the defendant was desirous of developing and improving the lands it owned and making the university campus a residential, as well as an educational center, by the erection of houses by members of the faculty and others connected with the institution. The defendant to effectuate its purpose designed the lease in question, by which, in consideration of the erection of a residence, it granted to the lessee for the nominal annual rental of one dollar, a plot upon which to erect a dwelling, the lease to continue for a period of thirty years.

It must be borne in mind that the particular lease under consideration was executed forty years ago, at which time it is a well-known fact costs of erection were but a small proportion of present costs. The lessees under such leases, for a nominal sum, secured a site and location for a house. Such lessees were not subject to taxation for the land. Upon the erection of a house, as in this case by Prof. Bristol, the defendant upon application, advanced a considerable portion of the cost of erection and took back a mortgage. The estimated cost of erection of the dwelling in this particular instance, upon the plans approved by the defendant through its board of trustees, was from $5,500 to $6,000. The university advanced $3,000 and took a mortgage to secure its payment. It was evidently contemplated by the parties that by reason of death, or resignation, or some other cause, the connection and relationship might end prior to the expiration of the specified term and, therefore, it was provided that upon termination of the lease by death, resignation or the reserved right of the defendant to terminate it, the lessee was entitled to receive value for the property he had erected. Bearing in mind the cost of construction, it was evidently deemed fair and reasonable to fix such value at not exceeding $5,000. The lessee, evidently recognizing the fairness of such a provision, acquiesced, accepted the lease and became a party to the contract.

It cannot be successfully contended that had the lease in question, during the thirty-year period, been terminated by the death or resignation of Prof. Bristol, or by the reserved right of defendant to terminate it, that the lessee could have recovered from the defendant any amount in excess of $5,000. The language is clear and explicit. The provision is so plain it needs no interpretation. There is no ambiguity about it. The plaintiff, however, contends that under the subsequent clause she is entitled to recover the full appraised value of the buildings, irrespective of the provision in the preceding paragraph that the sum to be paid should be " the then fair and just value, not exceeding $5,000," and despite the further provision, " Provided, nevertheless, that for any improvement made the party of the first part shall in no case be required to pay a sum in exceess of $5,000."

It is vigorously contended the plaintiff is now entitled to recover the sum of $21,504.24, the appraised value, because, the thirty-year period expired, Prof. Bristol continued in possession under the agreement until his death, and she continued in possession by act of the authorities of the defendant until July, 1930, and bases her claim upon the proposition that because she served a notice that she would surrender possession of the premises, not at the end of the thirty years, but at the end of the extended period during which Prof. Bristol in his lifetime, and she subsequent to his death, had occupied the premises, she is entitled to the full appraised value. We feel that such a construction is not justified by the language used. The fair and just value under the clause upon which the plaintiff relies is the fair and just value of the building erected upon the premises " in pursuance of the provisions of this lease," and is to be determined and ascertained " in the manner above provided by appraisers chosen and acting as above specified."

The language of the paragraph upon which the plaintiff relies, unfortunately, is not so clear and specific as the language of the preceding paragraph. We believe, however, that the court would not be justified in construing such language as meaning that the parties contemplated while the defendant reserved the right to terminate the lease and pay not exceeding $5,000 during the thirty-year period, yet if the lessee, at the end of the thirty-year period surrendered possession of the premises he would then be entitled to an appraised value which might be greatly in excess of the $5,000 limitation.

The construction contended for is unreasonable. It could not have been in the minds and contemplation of the parties. It undoubtedly is true that conditions have changed, that costs of building have increased, that the development and progress of the

defendant have been such that now a property erected under a lease executed forty years ago may be of a much greater market value, if it has market value, or much greater appraised value, termed just and true value, than was contemplated by the parties. That does not, however, in any manner change the construction which must be placed upon the language which was deliberately chosen and used by the parties to the contract. The parties might have contemplated that at the end of thirty years the dwelling erected upon the premises would be worth much less than when it was constructed. It is natural to assume they did so contemplate, but to construe the agreement made by the parties as meaning that if the defendant terminated the lease, or if the lessee died or resigned at the end of the twenty-ninth year, the defendant would then be obligated to pay only $5,000, yet if the lessee lived and continued his connection with the defendant, and the defendant did not elect to terminate, that then at the end of the thirty-year period, or any time thereafter, the lessee could surrender the property and recover its full, fair and just value without any limitation, is a strained and unreasonable construction. It was not contemplated, in our opinion, by the parties, and to so construe the contract would do violence to the language used.

It is our opinion that under the facts established, the plaintiff is entitled to recover the fair and just appraised value of the property in the sum of $5,000, the appraised value being greater than the limitation expressed, less the amount of the mortgage loan and interest.

The defendant having tendered and paid into court the sum of $2,285.88, being the difference between $5,000 and the amount of the mortgage, with interest, together with costs, to the date of tender, judgment should be rendered in favor of plaintiff and against defendant for the sum of $2,285.88, without costs.

Some question has been raised as to the method of appraisal. The decision of the court on the issue as to the proper construction of the contract is such that such question is of no importance and does not require decision.

Submit findings and judgment accordingly.