THE BERGER PROPERTIES, INC., Plaintiff, *v.* KAY JEWELRY COMPANY, INC., and Others, Defendants.

Supreme Court, Erie County, April 10, 1933.

*Desbecker, Fisk & Newcomb* [*Walter C. Newcomb* and *James O. Moore* of counsel], for the plaintiff.

*Saperston, McNaughton & Saperston* [*Daniel McNaughton* and *Alfred M. Saperston* of counsel], for the defendants.

CHARLES B. WHEELER, Official Referee. The plaintiff in this action seeks to restrain the defendant, its tenant and occupant of a store and basement known as No. 568 Main street, Buffalo, N. Y., from interfering with and impeding the use of a part of the heating equipment in the leased premises and a right of way for the conveyance of fuel to boilers designed and used to heat the entire building. The lease is dated April 2, 1924, and is for the term of fifteen years, to commence May 1, 1924. The lease states the premises is to be used as a jewelry store.

The store leased comprises a part of a building consisting of two stores known as 568 and 570 Main street. Above the stores the building is used as a hotel. A corridor or hallway divides the stores and leads to an elevator, extending from the basement to the top story of the building.

There is a basement under each of the stores. Immediately in front of the basement wall and under the sidewalk on Main street there is a vault, having a manhole through the stone sidewalk secured by trap doors. In the rear of the basement wall is another vault where there is installed a boiler for heating the premises. The basement beneath the store is separated by partitions. The basement beneath the store leased to the defendant, at the time of letting, had three partitions, one at the northeast corner, from whence a stairway leads to the corridor of the hotel; another partition extended along the north side in which was housed the water heater and a boiler; the third partition was on the south side and was used by the defendant for storage purposes. The boiler equipment consisted of a large boiler in the vault in the rear, which was used

to generate steam for heating the two stores and the hotel. The water heater in the basement was used to supply hot water to the stores and the hotel. There was also in the basement of the store at No. 568 an auxiliary coal boiler employed to heat hot water in seasons of severe weather.

There was an arched entrance leading from the basement of the store at No. 568 to the vault under the sidewalk and another entrance through a fire door to the boiler vault.

The boilers and heaters described were located where they are prior to 1892 and since that time have been used for the purposes stated.

For such purposes it was the practice to deliver coal into the vault under the sidewalk through the manhole, and from thence the coal was wheeled in barrows through the arched opening to and through the fire door in the rear and fed to the boiler in the boiler vault. When the auxiliary boiler was used coal was taken through the arched opening to it. The water heater was fueled by gas.

The plaintiff had leased the hotel and covenanted to furnish heat at its own expense to the entire building " from the present radiation."

In the lease with the plaintiff to the defendant it was provided as follows: " 19. The lessor agrees to furnish heat to said premises, *from the present radiation* when reasonably required; and it is agreed that he shall not be liable for any loss or damage arising from failure of the heating plant to operate due to any cause beyond his control."

In this connection it should be noticed that in and by the lease in question the lessee agreed as follows: " The lessee hereby agrees not to make any alteration or additions to said premises, or any part thereof or to remove any part thereof, nor suffer or allow the same to be done without the written consent of the lessor first obtained in each and every case."

The defendant went into the occupation of the leased premises and from that time up to shortly prior to the commencement of this action in the summer of 1931 the basement and heating plant described were used in the way and manner above stated by the storing of coal and conveying it to the boilers without any objection or protest on the part of the defendant. This covers a period of upwards of seven years of such use.

The defendant now contends it desired the use of the basemen- under its store for the purpose of extending its business, and pro- posed carrying a stock of radios and other articles. Thereupon the defendant closed the arched doorway leading to the vault under the sidewalk and this prevented the use of the vault for storage of

coal and conveying it to the boilers. With this arched entrance closed the only way by which coal can be supplied to the boilers is by bringing it to the boiler vault through an alley leading from Pearl street in the rear of the premises. The defendant contends this may be done. The plaintiff on the other hand contends the alley in question is a private and not a public alley, and it had no right to the use of the alley save by procuring the permit of its owners to such use. In any event if the plaintiff can use the alley in question coal to be burned in the auxiliary boiler can only be delivered to it by wheeling it through the basement from the boiler room to this boiler.

It is true the lease in question contains no express mention of the vault under the sidewalk or of the boiler room in the rear and makes no mention of a right to wheel and convey coal from the vault under the sidewalk to the boilers as had been done in the past and continued up to the time the arched doorway was closed. The plaintiff contends this practice was necessarily contemplated and provided for by the terms of the lease, and the lease should be so construed. The referee deems this to be the main question presented in this case.

In construing written contracts the surrounding facts and circumstances may be shown and considered. (Williston Cont. 1198, 1214; *Becker* v. *Frasse & Co.*, 255 N. Y. 10, 14; *Griffiths* v. *Hardenbergh*, 41 id. 464; *Gillet* v. *Bank of America*, 160 id. 549; *Brokaw* v. *Lage*, 203 App. Div. 155; *Columbus Spa, Inc.*, v. *Star Co.*, 216 id. 218; *Halperin* v. *McCrory Stores Corp.*, 207 id. 448; *Times S. Imp. Co., Inc.*, v. *Fleischmann V. M. B., Inc.*, 173 id. 633.)

By the lease the landlord agreed to supply heat to the defendants' store by the " *present radiation*." The defendant contends that this only applied to the piping and radiators installed in the store and rooms of the building and has no application to the boilers in the basement by which the heat was generated.

The referee cannot agree with this contention. We are of the opinion that when the words " *present radiation* " were used it was intended to include all the apparatus and plant then employed for that purpose.

The entire plant was essential. The reading of section 19 of the lease discloses that the plant as well as the radiators in rooms was contemplated, for in immediate connection with the words " *present radiation* " was added that the landlord should " *not be* liable for any loss or damage arising from failure of the *heating plant* due to any cause beyond his control." The " plant " itself was plainly deemed a part of the " radiation " and we think the lease must be so construed. It was an essential, if not *the* essential part of the system.

In addition we must also consider the agreement in the lease that the lessee is *" not to make any alteration to said premises without the lessor's consent."*

When the defendant closed the arched door leading to the vault and thus prevented the use of the vault for storage of coal and its conveyance therefrom to the boilers it certainly made an *" alteration to said premises "* and a very vital one. The defendant contends this clause simply forbade such alterations to the *building* itself as would impair its strength. However, the words used forbid any *" alteration to the premises "* and did not confine the alteration to the building. The words employed are of a broader scope and meaning than those forbidding alterations to a building. We think the words used related to the entire layout of the property and included the plant for supplying heat and hot water and forbade any alteration which would prevent their use as they stood at the time the lease was made, and that the words *" present radiation "* clearly meant the *plant* just as it stood at the time without change. We need only cite the words of Chief Judge CARDOZO in *Becker v. Frasse & Co.* (255 N. Y. 10, at p. 14), where the learned jurist said: *"* The rule has often been declared that a contract is to be read in the light of the circumstances existing at its making, and that these may avail to stamp upon a word or phrase a loose or secondary meaning as distinguished from the strict or primary meaning to be gathered from the instrument unenlightened by extrinsic aids." (Citing *Utica City Nat. Bank v. Gunn,* 222 N. Y. 204, 208; *Atwater & Co. v. Panama R. R. Co.,* 246 id. 519, 524; *Kenyon v. Knights Templar & M. M. A. Assn.,* 122 id. 247; *Lamb v. Norcross Bros. Co.,* 208 id. 427.)

In *Cooper v. Scott* (143 Iowa, 745, at p. 750) the court said: *"* 'Radiation' means something more than radiators. Radiation refers to heating capacity of the radiators when connected up with the boiler."

We are of the opinion moreover that the vault under the sidewalk in front of the defendant's store must be deemed included in the lease, and that when the defendant closed the arched doorway leading to it it was guilty of a violation of the terms of the lease forbidding alterations to the premises without the landlord's consent.

It was held in the case of *Times S. Imp. Co., Inc., v. Fleischmann V. M. B., Inc.* (173 App. Div. 632) that the specific mention of a vault in a lease of a store is not essential to its inclusion therein, and that the fact may be proved by circumstances showing an intention to include it, such as the conduct of the parties indicating that they considered it a part of the premises.

These considerations above stated lead the referee to the opinion

the plaintiff is entitled to the injunction asked, but in addition the referee should state that in his opinion the parties themselves have given the lease a practical construction in harmony with the views entertained.

For upwards of seven years of the life of the lease the premises have been used by the parties in the way and manner described without an objection or word of protest on the part of the defendant. If the defendant claimed greater rights in the basement than those actually exercised, it seems it should have at least so indicated.

Clause 12 of the lease recites that the lessee takes the lease after an examination of the premises.

It knew just what were in it and how it was being used and cannot now well claim ignorance as to them, and the fair presumption is it leased with a view of their continued use as they had been used in the past.

The defendant contends that it is not absolutely necessary that the practice of storing coal in the vault under the sidewalk and wheeling it to the boilers should be continued; that the boiler room can be rearranged so as to permit the storage of coal there and the generating of steam. To that end plans for such a rearrangement were submitted to the referee, and it is possible that such changes might be made, but such changes all involve the expenditure of considerable amounts of money.

The answer, however, to such suggestions is that if the referee is correct in the views entertained the landlord is not legally required to make any such changes, but has the right to stand on the provisions of the lease as made. Such changes as have been suggested also involve the right to use the alley for access to the boiler room. This alley is clearly a private alley. It has never been dedicated and opened for public use. The city years ago began proceedings to condemn the alley as a public highway, but abandoned the proceedings. The fee of the alley was assessed as private property and sold for unpaid taxes and a deed given. It was never worked or improved by the city, and the very most that can be claimed for it is that it is a private alley over which the defendant claims the plaintiff has an easement for its use.

If the referee is correct it is a matter of no consequence if such is the case, and it is unnecessary for the referee to determine whether such an easement exists or not. It does not appear that the alley in question originally ran from Main street to Pearl street. The easterly half of the alley as it originally existed has been closed and built over, and no longer exists as an alley. The westerly half of the alley is still open and unbuilt on. In 1911 this portion of the alley was deeded for unpaid taxes to one Wadhams, who in turn conveyed to Max G. Beirl and in 1913 Beirl and wife conveyed the alley to

the McNaughton Realty Company, Inc., and later the McNaughton Realty Company, Inc., merged with the Shea Amusement Company which now is at least the apparent record owner of the title of the alley back half way to Main street. We think it apparent from the record that in 1913 the owners of the dominant estates bounding on the alley undertook by deeds exchanged to extinguish any private easement in the alley and that the Shea Amusement Company must now be deemed to own the property free and clear of any private easement therein. If this view is correct, then the plaintiff in this action has no right of way over it, and only the Shea Amusement Company may grant one.

As a conclusion of the whole matter, we find the plaintiff entitled to the relief demanded in the complaint.

Let a decision be drawn accordingly.