Benjamin Brenner, J.
Defendant moves for an order pursuant to rule 106 of the Rules of Civil Practice to dismiss the first cause of action for the breach of a written contract for legal insufficiency.
In pleading this cause plaintiff sets forth the relations of the parties, that they entered into a contract in writing, plaintiff’s readiness to perform and its commencement of performance, and that it duly demanded performance of the defendant which wholly failed and still fails and neglects to perform.
The allegations of due performance are adequate as to all contract terms, inclusive of the requirement that plaintiff furnish proof of solvency and thus comply with rule 92 of the Rules of Civil Practice relating to conditions precedent to be performed on plaintiff’s part. In examining a pleading attacked for insufficiency, the allegations of fact stated therein are for the purpose of the motion assumed to be true (Locke v. Pembroke, 280 N. Y. 430). A proper cause of action has therefore been pleaded.
However, the defendant argues that the written memorandum attached to the complaint is merely an agreement to agree on further essential terms to be incorporated in a formal agreement and accordingly is incomplete on its face and unenforcible. This contention is based on the following points as enumerated in the contract:
Point No. 7: As added protection for our mutual benefit, it is agreed that the Brass Steel Corp. will agree to a Chattel Mortgage on its machinery, which presently is free and clear of any indebtedness. Also the Chattel Mortgage will be worded in such way, that provision can be made for the purchase of new machinery or better equipment for expansion. * * *
Point 11: The Brass Steel Corp. agrees to submit a valid statement to show that it presently is completely solvent and able to take care of its present commitments.
This is essential in order to validate the issuance of any Chattel Mortgages, which, of course, would prove meaningless unless the Corporation was solvent. * * *
Accordingly, we expect at very earliest your statement of accounts payable, receivable, etc., with complete information necessary to the closing of this agreement.
The contract is made part of the pleading and is before the court so the rights and obligations of the parties must be determined by its language and not by any characterization of its *345 terms by the parties. (Kendell v. Oakland Golf Club, 282 App. Div. 1057, affd. 307 N. Y. 753.) True, the parties did agree that certain conditions prior to formalization of the contract were to be completed at a later date. Obviously the noncompletion of or noncompliance with those conditions, if proved to be the fact, might raise questions of avoidance and enforcibility but the contract appears to be complete on its face notwithstanding the recitation therein of such prerequisite conditions. The inference to be drawn from the document is that the parties were to abide by it and that it was to remain in full force and effect until execution of the more formal contract, as evidenced by the language at the end of the agreement which reads as follows:
If the foregoing is in accordance with your ideas and our conversations and agreement, please sign this temporary agreement, which ivill serve as our understanding until the formal agreement is drawn up by our lawyer, and the formal Chattel Mortgages executed. This represents our understanding and working agreement until legalized by appropriate contract. (Emphasis supplied.)
It is clear therefore that the stipulation for future formalization and the condition to be fulfilled prior thereto do not render the contract an agreement to agree.
While the language of the agreement, as above quoted, appears to provide for its immediate effectiveness, it may of course be true that the parties never actually intended that it should go into effect until it be formalized and the documents exchanged. But the intention of the parties at the time of their agreement as to its commencement cannot be determined on a motion of this character. This must await trial when the relations of the parties and the circumstances under which the contract was executed may be examined. As stated by Judge Cardozo in Becker v. Frasse & Co. (255 N. Y. 10, 14): 11 The rule has often been declared that a contract is to be read in the light of the circumstances existing at its making, and that these may avail to stamp upon a word or phrase a loose or secondary meaning as distinguished from the strict or primary meaning to be gathered from the instrument unenlightened by extrinsic aids ” (emphasis supplied).
And in Hart v. Socony-Vacuum Oil Co. (291 N. Y. 13, 18) the court said: “ ‘ While the construction of writings is, to be sure, matter of law in the sense that it is an affair for a judge, still the particulars of the process of ascertaining the disclosed intention of a writer are for the most part items of fact. ’ ” (Emphasis supplied.)
The defendant being the scrivener of the agreement should have so worded it as to avoid any ambiguity created. I must *346 favor the plaintiff as to every fair inference of its pleading (Dyer v. Broadway Cent. Bank, 252 N. Y. 430), and as the contract lends itself to the inference of validity the motion is denied; defendant is directed to serve its answer within 10 days after the service of a copy of the order to be entered herein with notice of entry.
Settle order on notice.