WILLIAM C. ATWATER & COMPANY, INC., Appellant, *v.* PANAMA RAILROAD COMPANY, Respondent.

Contract — sale — rule for interpreting contracts — action to recover for breach of contract to purchase — provision that tonnage unshipped at expiration of agreement should be considered canceled — no bar to action where reading of entire contract shows no intention to release accrued claim for breach — rule that ambiguous clause is to be taken most strongly against party who prepared it does not justify interpretation of isolated clause without regard to rest of contract.

1. In interpreting a contract the court should examine the entire agreement and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought.

2. An action to recover damages for breach of a contract to purchase coal may be maintained, notwithstanding a provision that " any portion of the tonnage remaining unshipped at the expiration of this agreement shall be considered as canceled without notice," where, from a reading of the clause, in connection with the entire contract, it is evident the plaintiff had no intention of releasing claims against defendant for breach of contract which had accrued at the date of the expiration of the agreement and that defendant could not reasonably have so understood the language used.

3. The rule that in case of ambiguity a clause in a contract is to be taken most strongly against the party who prepared it does not warrant the taking of an isolated clause in dispute and finding its meaning without regard to the surrounding circumstances or the apparent purpose which the parties sought to accomplish.

*Atwater & Co.* v. *Panama R. R. Co.,* 218 App. Div. 716, reversed.

(Argued December 2, 1927; decided December 16, 1927.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 3, 1926, unanimously affirming a judgment in favor of defendant entered upon the report of a referee.

*Wilson W. Thompson* and *Edward M. Bassett* for appellant. The referee erred in holding that the obligation to perform was canceled by the last sentence of paragraph 4 of the contract conditions. The effect of this ruling was to destroy the whole instrument as a contract and to render nugatory and meaningless all the important provisions therein by which the parties had sought to create or limit mutual obligations. The interpretation placed upon the contract by the referee is contrary to well-established canons of construction. (*O'Brien* v. *Miller,* 168 U. S. 287; *City of New York* v. *Delli Paoli,* 202 N. Y. 18; *Fleishman* v. *Ferguson,* 223 N. Y. 235; *Sattler* v. *Hallock,* 160 N. Y. 291; *Clark* v. *DeVoe,* 124 N. Y. 120; *People* v. *Gluck,* 188 N. Y. 167; *GaNun* v. *Palmer,* 216 N. Y. 603; *Page* v. *Faure,* 229 N. Y. 114; *McCloskey* v. *Cromwell,* 11 N. Y. 593; *Atterbury* v. *Bank of Washington Heights,* 241 N. Y. 231.)

*Richard Reid Rogers* for respondent. The defendant, apart from the cancellation clause, received from the plaintiff and paid for a larger tonnage of coal than it was under any legal obligation to take under the terms of the contract. (*Pope* v. *Porter,* 102 N. Y. 366; *Wolfert* v. *Caledonia Springs Ice Co.,* 195 N. Y. 118; *Normandie Shirt Co.* v. *Eagle,* 238 N. Y. 218; *Hull Coal & Coke Co.* v. *Empire Coal & Coke Co.,* 113 Fed. Rep. 256; *Maurer Co.* v. *Tubeless Tire Co.,* 272 Fed. Rep. 990; *Jarnvagsstyrelsen* v. *Nat. City Bank,* 20 Fed. Rep. [2d] 307; *General Commercial Co.* v. *Butterworth,* 198 App. Div. 799; *Metropolitan Coal Co.* v. *Billings,* 202 Mass. 457; *Delaware, Lackawanna & Western R. R. Co.* v. *Bowns,* 58 N. Y. 573; *Kellogg* v. *Boutwell Mining & Grain Co.,* 203 App. Div. 350.) The contract expressly stipulated that any portion of the tonnage remaining unshipped should be considered as canceled without notice. (*Simon* v. *Etgen,* 213 N. Y. 589; *Industrial & General Trust, Ltd.,* v. *Tod,* 180 N. Y. 215; *Strauss* v. *Ernstein,* 232 N. Y. 187; *Maurer Co.* v. *Tubeless Tire Co.,* 272 Fed. Rep. 990; *Worcester Post Co.* v. *Parsons Co.,* 265 Fed. Rep. 591; *Interstate Iron & Steel Co.* v. *Northwestern Bridge & Iron Co.,* 278 Fed. Rep. 50.)

POUND, J. The action is brought to recover damages for breach of a contract for the purchase of coal. The contract was made on July 28, 1920. Plaintiff agreed to sell and defendant to buy 36,000 tons of coal at an agreed price. The contract ran from August 1, 1920, to July 31, 1921. The coal was to be delivered in approximately equal monthly installments at the rate of 3,000 tons a month. Plaintiff's contention is that defendant refused to accept some 12,500 tons which it was obligated to receive under its contract by July 31, 1921, and that it has been damaged thereby the difference between the contract price and the lesser market value of the coal.

The case was tried before a referee. He found that, by the terms of the contract, no recovery could be had for breach of contract for any portion of the tonnage remaining unshipped on July 31, 1921, and dismissed the complaint. The Appellate Division unanimously affirmed the judgment of dismissal.

Plaintiff operated a coal mine in West Virginia. It had many large contracts for future shipments. Under existing conditions, it was not disposed to bind itself absolutely to deliver the coal in regular monthly portions. It accordingly protected itself by carefully worded provisions in the contract against possible liability for undelivered tonnage. All deliveries were subject to war conditions, insurrections, mine disasters or breakdowns, fires, accidents, shortage of cars or interruptions of car service, strikes, labor agitations or disturbances, shortage of labor supply or any other causes beyond its control. If by reason of such causes the production of plaintiff's collieries should be less than their normal maximum capacity, tonnage to be delivered under the contract *might at the option of the seller* be reduced without liability on the part of the seller for such reduction. In case of strikes or accidents unavoidably causing the stoppage of the works or the business of the purchaser, the purchaser might request deliveries to be suspended during such stoppage and the tonnage of deliveries so suspended would be canceled.

Then comes the following clause:

" 4. Unless otherwise specified, *all coal sold under this contract must be ordered and taken by the purchaser regularly,* in substantially equal monthly proportions; otherwise the *seller shall without notice to the purchaser at any time during the contract period, have the right to cancel any tonnage of coal not taken by the purchaser* up to that time. In such case *the seller shall also have the right to reduce the tonnage of shipments during the remainder* of the contract period to the basis of average monthly deliveries

which have been previously taken by the purchaser. *Any portion of the tonnage remaining unshipped at the date of expiration of this agreement shall be considered as canceled without notice.*"

During August, September and November, 1920, plaintiff was unable to deliver the full 3,000 tons a month called for by the contract, but on January 31, 1921, it claims to have delivered in full both the current and the deferred tonnage. On March 7, 1921, defendant refused to take any coal for its account after that date and refused to order any future deliveries.

On July 31, 1921, the date of the expiration of the agreement, plaintiff claimed that a balance of upwards of 12,500 gross tons remained unaccepted and unpaid for by the defendant. The case was disposed of by the learned referee on his reading of the last clause of paragraph four of the contract quoted above which, he held, became self-operative at the termination of the contract and a bar to any cause of action by plaintiff for breach by defendant of its contract to order and receive coal.

" Any portion of the tonnage remaining unshipped at the date of the expiration of this agreement shall be considered as canceled without notice." When this clause is read in connection with the entire contract, and particularly with the other provisions of paragraph four, it is evident that the plaintiff had not the remotest intention of releasing any claims against defendant for damages for breach of contract which had accrued at the date of the expiration of the agreement and that the defendant could not reasonably have so understood the language thus used. The buyer's rights were not the object of the seller's solicitude. If the seller had failed, in the exercise of its right to delay or defer shipments, to ship any portion of the tonnage, the buyer's rights to demand further shipments were to cease with the expiration of the contract. The right of the seller to damages for the buyer's breach of the contract remained unaffected.

If this were not so, the buyer might breach its contract and refuse to order and receive coal with impunity. The general sense of the contract compels us to reject this result. Reason, equity, fairness — all such lights on the probable intention of the parties — show what the real agreement was. The clause in question may have been inserted by way of greater precaution without adding to the contract anything of substance which the law did not imply, but it cannot, taken as the part of a whole, be read as meaning that any claim of the seller against the buyer for damages for failure to take deliveries of coal should at the expiration of the agreement be deemed canceled without notice. To give it such a meaning would attribute to plaintiff a generous purpose wholly inconsistent with its manifest sharpness in bargaining.

The learned referee says that this condition is plaintiff's own and in case of ambiguity is to be taken most strongly against it as the party who prepared the contract. He, however, takes the isolated clause in dispute and finds its meaning plain. In this we think he disregarded the proper rule for the construction of contracts. " Contracts are not to be interpreted by giving a strict and rigid meaning to general words or expressions without regard to the surrounding circumstances or the apparent purpose which the parties sought to accomplish." (*Robertson* v. *Ongley Electric Co.*, 146 N. Y. 20, 24; *Gillet* v. *Bank of America*, 160 N. Y. 549, 556.) The court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought.

By giving an eleemosynary rather than a business meaning to the words used in a cautiously drawn contract, the court below has placed the seller at the mercy

of the buyer and the agreement to buy has become a mere option. This result is to be avoided if possible. (*Russell* v. *Allerton,* 108 N. Y. 288; *Robertson* v. *Ongley Electric Co., supra.*) A reading of the whole agreement makes it not only possible but unavoidable.

As the court below disposed of the plaintiff's case solely on the question of the meaning of the clause quoted above, the case should be sent back for a new trial. Although plaintiff contends that the record establishes liability for the amount claimed, the defendant challenges this conclusion and claims performance.

The judgment of the Appellate Division and that entered on the referee's report should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgments reversed, etc.