WILLIAM C. ATWATER & COMPANY, INC., Respondent, Appellant, *v.* PANAMA RAILROAD COMPANY, Appellant, Respondent.*

First Department, May 29, 1930.

*Wilson W. Thompson* of counsel [*Edward M. Bassett* with him on the brief; *Bassett, Thompson & Gilpatric*, attorneys], for the plaintiff.

*Richard Reid Rogers*, for the defendant.

SHERMAN, J. Plaintiff operates a mine on the Norfolk and Western railroad, and entered into a written contract with defendant on July 28, 1920, whereby it sold to defendant 36,000 tons of coal to be shipped in installments. The contract contained several provisions, upon the interpretation of which this appeal in large part depends.

Upon the first trial of this action the complaint was dismissed because of a clause in the contract relating to unshipped coal. That judgment was reversed, a different view being taken of that provision of the contract, and a new trial was directed. (*Atwater & Co.* v. *Panama R. R. Co.*, 246 N. Y. 519.)

Against the 3,000 tons to be shipped monthly, plaintiff during August, September, October and November failed to ship the total required by the contract, but in December and January overshipments were made so that by the end of January, 1921,

* Modfg. 132 Misc. 704.

277 tons more than the 18,000 required during the first six months had been shipped. During the fall of 1920 coal prices had risen and defendant was asking for deliveries. At the end of January prices were declining and defendant requested plaintiff to limit the February and March shipments to 2,000 tons, and on March 2, 1921, defendant broke the contract by notifying the Norfolk and Western railroad to receive no more coal consigned to it by plaintiff, and refused to take any more coal until July 26, 1921, at which time it accepted 2,012 tons.

There remained undelivered about 12,500 gross tons out of the total of 36,000 tons called for by the contract, and this action is for damages growing out of defendant's failure to take full contract tonnage.

An important provision of the contract is: " Deliveries under this contract are subject to war conditions, insurrections, mine disasters or breakdowns, fires, accidents, shortage of cars or interruptions of car service, strikes, labor agitations or disturbances, shortage of labor supply or any other causes beyond our control. If during the period of this contract the production of the aforesaid collieries shall for any cause above stated be less than their normal maximum capacity, the tonnage to be delivered under this contract shall at the option of the seller, be reduced in proportion and there shall be no liability on the part of the seller for the reduction so made. In case of strikes or accidents unavoidably causing the stoppage or partial stoppage of the works or business of the purchaser, the delivery herein contracted for may, upon request of the purchaser, be suspended or partially suspended during such stoppage, and the tonnage of deliveries so suspended shall be cancelled."

This phraseology is significant. If production at the mine was lessened, the seller had the option to reduce without liability on its part the tonnage which otherwise it was required to ship. One of the questions presented is whether it actually exercised this option.

Under the strike clause inserted to protect the purchaser deliveries might be suspended and the tonnage so suspended canceled at the request of the purchaser. One of the disputes is whether a marine strike which is claimed to have existed from May 1, 1921, to June 16, 1921, produced the stoppage of defendant's " works " or " business," and if so, whether there was a request by defendant for a suspension of deliveries during that period, so that the suspended tonnage was canceled. It would not be enough for the strike to exist and to produce the cessation of defendant's business. Defendant had to request a suspension of deliveries before it could become entitled to a cancellation of tonnage. (*Jungmann & Co., Inc.*, v. *Atterbury Bros., Inc.*, 249 N. Y. 119.)

The damages allowed to plaintiff have been diminished by deduction for 4,500 tons which defendant has been excused from taking because of a marine strike from May 1 to June 16, 1921, which the court at Trial Term held caused the stoppage of defendant's " works " or " business " under the strike clause; secondly, by a counterclaim allowed by the court for damages because of plaintiff's short deliveries during August, September and November, 1920. Both plaintiff and defendant appeal from the judgment.

Plaintiff asserts that defendant under its counterclaim may not recover any damages for coal undelivered during August, September and November, 1920. That result might have been reached if the seller had actually exercised the option mentioned in the contract.

Plaintiff contends that the court erred in holding that defendant was entitled under the counterclaim to damages for short deliveries during August, September and November, 1920. This contention cannot prevail in the face of a finding that plaintiff did not exercise the option.

The evidence sustains the finding that this option was not actually availed cf. There was no reduction in the amount which the seller was bound to deliver during those months. Deliveries were merely postponed. In answer to defendant's demands for the delivery of 3,000 tons per month during that period when the price was high, plaintiff did not claim that the tonnage to be delivered should be reduced, but on the contrary, it admitted its liability to make such deliveries and then proceeded to make up this deficit by excess deliveries during December and January. Plaintiff could not play fast and loose and take an equivocal position so as to hold defendant to the entire tonnage in the event that the market price dropped, while remaining free to claim, if the market price rose above the contract price, that the tonnage had been reduced. The mere fact that there were short shipments during those months does not prove that plaintiff actually exercised that option. The court properly held that under the evidence these short shipments amounted merely to a postponement of deliveries, and that the total tonnage was not altered. There is ample support for the view of the trial court both that there was no reduction of the total amount which the seller was obligated to deliver under the contract and that the seller was liable for the short shipments during August, September and October, 1920.

Defendant has been relieved from liability for 4,500 tons of untaken coal because of the strike clause. There was a dispute in the evidence as to whether or not this strike was effective in causing a stoppage or partial stoppage of defendant's " works " or " business." The court held upon altogether too scanty proof that

it was an effective strike within the language of that clause. The strike affected merely the operation of four vessels used by defendant to transport coal. There was no stoppage of its " works " or " business " within the purview of the strike clause. Further there is no evidence that the purchaser requested that deliveries be suspended, and the tonnage of the alleged suspended deliveries was never canceled.

Such a request had to be made before defendant could escape the requirement of taking the full tonnage. It could not stand by and be in a position to claim the tonnage, if the market price rose, and to assert a past cancellation, if the market price fell below the contract price. It had to take a definite position as provided in the contract if it wished to cancel tonnage; the seller was entitled to know whether it took such a position and to act in the light of such action. Defendant pleaded in its answer that it did request such suspension, but it made no proof of such request. Merely notifying plaintiff of the existence of the strike was by no means equivalent to a demand for suspension of deliveries and cancellation of tonnage.

Accordingly the judgment appealed from should be modified by increasing the amount of plaintiff's recovery by the loss sustained through non-acceptance of the 4,500 tons disallowed by the trial court, and as so modified affirmed, with costs to the plaintiff, appellant.

DOWLING, P. J., MERRELL, MARTIN and O'MALLEY, JJ., concur.

Judgment modified as directed in opinion and as so modified affirmed, with costs to the plaintiff. Settle order on notice. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded.