In the Matter of the Judicial Settlement of the Account of Proceedings of MARTIN E. CORBETT, as Sole Surviving Executor, etc., of EDWARD H. CLIFT, Deceased, and of WILLIAM J. McKEE and Others, as Executors, etc., of EDWARD I. GOODRICH, Deceased Executor, etc., of EDWARD H. CLIFT, Deceased.*

MARTIN E. CORBETT, as Sole Surviving Executor, etc., of EDWARD H. CLIFT, Deceased, and Others, Appellants; EDWARD READ CLIFT and Another, Respondents.

First Department, March 6, 1931.

* Revg. 135 Misc. 4.

*Joseph M. Proskauer* of counsel [*Joseph M. Hartfield, Osmond K. Fraenkel, J. Alvin VanBergh* and *Carlos L. Israels* with him on the brief; *Goldsmith, Jackson & Brock,* attorneys for Martin E. Corbett, and *White & Case,* attorneys for Estate of Edward I. Goodrich], for the appellants.

*C. Alexander Capron* of counsel [*Charles Angulo* and *Thomas K. Egan, Jr.,* with him on the brief; *Taylor, Blanc, Capron & Marsh,* attorneys], for the respondent Edward Read Clift.

*Henry N. Flynt,* special guardian for Paula Irene Clift and Doris Edna Clift.

FINCH, J.   From a decree of the Surrogate's Court, the accounting executors and trustees of the estate of Edward H. Clift, deceased, appeal.

Primarily the questions presented relate to the construction of articles of copartnership and an allowance for good will upon the death of Edward H. Clift, November 5, 1916, who had been a member of the firm of Clift & Goodrich, composed of himself and Edward I. Goodrich.   This firm succeeded Edward H. Clift & Co., which in its turn had succeeded Critten, Clift & Co., the founders of the business in 1888.   The firm were commission merchants for various kinds of knit goods, representing mills which they financed by advances on merchandise and for whom they acted as sales agents.

The will of Mr. Clift provided that his executors and trustees might loan, at six per cent interest, to any partnership of which Edward I. Goodrich and certain of the employees of Clift & Goodrich were members, the whole or any part of the funds held in trust

under his will during the lives of the respective beneficiaries of the trust.

At the time of the death of Mr. Clift the firm, though prosperous, was indebted to banks in the sum of approximately $500,000. The problem which confronted the executors was the method of handling these loans so as to continue to finance the business of Clift & Goodrich. The partnership agreement contained the following clause:

" *Tenth.* In the event of the decease of either of the parties hereto during either of the months of January, February or March in any year of the existence of the co-partnership, the partnership business shall be wound up and liquidated on the 1st day of January following such decease. In the event of the death of either of the parties hereto in any month other than January, February or March during the continuance of the co-partnership, then the business is to be continued for the period of one year after the 1st day of January succeeding such death."

A new partnership was at once formed following the death of Mr. Clift and the funds from the estate of Mr. Clift were loaned to the new partnership under the will. At the time of the death of Mr. Clift, his son, Edward Read Clift, was thirty years of age and was with the partnership of Clift & Goodrich. Whether he knew of the immediate organization of the new firm and the simultaneous liquidation of the old firm and knew of the contents of the partnership agreement, were matters of fact which the referee found in favor of the accounting executors and trustees, and which finding the learned surrogate overruled. Six years later Edward Read Clift signed an informal account approving all the transactions including the taking over of the business immediately by the new partnership. As to this the referee found that it was explained in detail to Edward Read Clift, who at that time had left his father's firm and was engaged in a similar business under the name of Clift & Fraser. He signed an indorsement reading: " We hereby approve the foregoing accounts and the schedules hereto annexed and understand that the amount claimed by Mrs. Andrews is to be adjusted and paid and deducted from the amount held by the Executors as shown by the annexed schedules."

The surrogate has found that because Edward Read Clift, " without questioning and without guile, signed this paper, shows that he needs and ought to have the protection of this court." Upon this accounting Edward Read Clift maintains, and in this he has been supported by the learned surrogate, that it was mandatory upon the surviving partner to continue the business pursuant to the articles of copartnership until one year after the first day of January

following the death of Mr. Clift. Hence the estate of Mr. Clift is entitled to his share of the profits of the business under the agreement of copartnership as if he had been living for that period.

In our opinion the construction given to these articles of copartnership by the learned surrogate is not warranted. At the time of the making of the copartnership articles it was known to both partners that the firm required from $500,000 to $900,000 borrowed capital for the purposes of the business. This was obviously the important fact connected with the proper maintenance of this business. Clearly upon the death of either partner some latitude of time, if required by the surviving partner, must be allowed within which to refinance this business. There must, however, be a provision against the indefinite continuance of such latitude. Therefore, in article 10 of the partnership agreement there was a provision against the continuance of the partnership business beyond the first day of January following the decease in the event that the decease of either of the parties occurred during the months of January, February or March. If, however, the death occurred in any other month, then the business was not to be continued beyond the period of one year after the first day of January succeeding death. This prohibition is expressed directly in the opening sentence of the paragraph dealing with the decease of a partner and prohibiting the continuation of the partnership beyond the first day of January. The same prohibition is repeated in language less clear in the following sentence. There is an indirect grant of power to the surviving partner to continue the business, if he so desires, but the main thought is a prohibition against a longer continuance than is therein provided for. Such a construction harmonizes with the intent of the parties as shown by the will of Mr. Clift, wherein he permitted the funds in the trusts therein set up to be loaned immediately following his death or at any time to the partnership at six per cent interest. To hold that the articles of partnership rigidly bound the surviving partner to carry on the partnership would be an unreasonable construction which, if followed at the time of the death, might have made impossible the continuation of the business at all on account of the inability to renew all the loans. Under the articles of copartnership and the will of Edward H. Clift, we are unanimously of the opinion that the executors and trustees had the right immediately to liquidate the business as of a given date and loan the amount of his interest to the new partnership in accordance with the authority given by the will of Edward H. Clift. Thus article 10 was primarily intended for the benefit of the survivor, but with the main thought in mind of a prohibition against a continuance of the business beyond specified periods.

To hold that the surviving partner must continue the business at the risk of the capital of the decedent is an unnatural and extraordinary meaning and hence, in the absence of evidence to the contrary, is rejected as unreasonable. As was so well said by Judge POUND in *Atwater & Co.* v. *Panama R. R. Co.* (246 N. Y. 519, 524): " 'Contracts are not to be interpreted by giving a strict and rigid meaning to general words or expressions without regard to the surrounding circumstances or the apparent purpose which the parties sought to accomplish.' * * * The court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought."

We are likewise unanimously of the opinion that the finding that the objectant did not acquiesce in the immediate liquidation of the firm is against the weight of the evidence. On the contrary, this record shows that said objectant did so acquiesce. The finding, therefore, of the surrogate in this regard should be reversed, and the finding of the referee that Edward Read Clift was informed of all the facts, and with full knowledge thereof acquiesced in the action of the executors with reference to the liquidation of the old firm and the organization of the new firm, should be reinstated.

The executors, therefore, were not required to continue the partnership business. Hence they are not to be surcharged with any profits of the new copartnership. Nor should they be deprived of the usual commissions.

We are next brought to a consideration of the existence of good will and of the value to be allowed therefor. The record contains no evidence of the value of good will and the referee has found that there was none. The learned surrogate has reversed and allowed some $200,000 for this item. While we agree with the learned surrogate that there exists good will of some value, in our opinion the amount of this allowance is excessive. The amount to be allowed therefor is a matter requiring further proof.

In reference to the second objection of the special guardian relating to certain payments made by the trustees out of the principal of the fund under the 6th paragraph of the will, we are in accord with the finding of the referee that these payments, aggregating $1,625.95, made after the death of the life tenant under one of the trusts, were made in fulfillment of obligations incurred during her lifetime for her benefit. The executors should not have been surcharged with this item.

The decree of the surrogate should be reversed and the matter remitted to the surrogate to be dealt with in accordance with this opinion.

McAvoy, Martin and O'Malley, JJ., concur.

Decree reversed and the matter remitted to the Surrogate's Court for further action in accordance with opinion. Settle order on notice.