In the Matter of the Final Judicial Settlement of the Account of Proceedings of GEORGE M. NORTHROP, as Sole Surviving Executor, etc., of EMMA C. STERLING, Deceased.

REINHOLD ANDERSON, HATTIE B. FULLER, ELAINE FULLER HICKEY and EDNA P. BALDWIN, Appellants; GEORGE M. NORTHROP, as Executor, etc., of EMMA C. STERLING, Deceased, AUGUSTUS W. BENNET, as Special Guardian for LOIS STERLING, an Infant, etc., J. BRADLEY SCOTT, as Special Guardian for EUGENE M. ANDERSON and ALVIN LESLIE ANDERSON, Infants, etc., and EDWARD H. STERLING, as Administrator, etc., of DAVID M. STERLING, Deceased, Respondents.

Second Department, June 8, 1942.

*Charles W. U. Sneed,* for the appellants.

*Frederick G. Hulse,* for the respondent George M. Northrop, as executor, etc.

*Augustus W. Bennet,* as special guardian for the respondent Lois Sterling, an infant.

*Charles I. Sterling [Leo E. Falkin* with him on the brief], for the respondent Edward H. Sterling, as administrator, etc.

JOHNSTON, J. The sole question presented involves the construction of the testatrix's will, executed February 23, 1938, and a contract she made with her husband thirteen years previously.

The facts are as follows: On May 4, 1925, Edward L. Sterling, testatrix's husband, executed a will in which his wife was named sole beneficiary and executrix. Contemporaneously with the execution of the will, the executrix and her husband entered into a written contract, prepared by the same attorney who drew the will. The contract recited the making of the will by the husband whereby he devised and bequeathed all his property to his wife, and contained a covenant on the part of the wife in consideration thereof to make and execute a will " whereby they [*sic*] shall be given and bequeathed on her death, from the properties *received* from said Edward L. Sterling " certain specified amounts totaling $19,500 to fifteen collateral relatives of both parties. The contract further provided that " All the remainder of the principal as *devised* to the said Emma C. Sterling shall be given and bequeathed to Edna P. Baldwin and any and all shares of such parties as may have predeceased the said Emma C. Sterling." (Italics mine.)

On April 17, 1926, the husband died, and his will was admitted to probate on September 21, 1926. The husband's gross estate was approximately $24,000, and consisted of the following:

1. *Trust property.*
Three savings bank accounts in the name of Edward
L. Sterling, in trust for Emma C. Sterling . . . . . . . . . . . .    $13,718 03

2. *Joint property.*
A savings bank account in the amount of $216.10 in
the name of Edward L. Sterling or Emma C. Sterling,
payable to either or the survivor; also a $2,500 mort-
gage payable to Edward L. Sterling and Emma C.
Sterling, his wife, or the survivor of them . . . . . . . . . . .    2,716 10

3. *Tenancy in common.*

Two mortgages, one in the amount of $5,500 and the other in the amount of $1,000, payable to Edward L. Sterling and Emma C. Sterling.................... $6,500 00

4. *Individually-owned property.*

An Odd Fellow's death benefit in the amount of $100 and seven Liberty Loan Bonds appraised at $712.68.................................... 812 68

Testatrix died on June 17, 1938, leaving a will dated February 23, 1938, which was admitted to probate. The will complied with testatrix's contract of May 4, 1925, although, as recited therein, testatrix expressly limited the payment of the contract bequests to the property she received " under and by virtue of the Last Will and Testament of said EDWARD L. STERLING, insofar as such property shall be adjudged to be included by said agreement." More specifically, paragraph " Second " provides as follows:

" In the event and in the event only that there shall be in full force and effect at the date of my death a certain purported agreement dated May 4, 1925 between EDWARD L. STERLING and me providing for the disposition by my Last Will and Testament of the properties received by me under and by virtue of the Last Will and Testament of EDWARD L. STERLING, and in the further event only that such purported agreement shall be held by a Court of competent jurisdiction to be a valid and effective contract as of the date of my death, then and in that event only, and upon the fulfillment of each of said conditions, I give, devise and bequeath all of the property, both real and personal, which I received under and by virtue of the Last Will and Testament of said EDWARD L. STERLING, insofar as such property shall be adjudged to be included by said agreement and after deducting therefrom all debts, inheritance taxes, funeral and administration expenses in the Estate of said EDWARD L. STERLING, including my lawful commissions as Executrix therein, and after deducting therefrom also all my debts, funeral and administration expenses and lawful commissions of my Executors, as follows:" Then follow the names of twelve of the fifteen beneficiaries named in the contract — three whose legacies aggregated $2,500 having predeceased the testatrix — with the same amount set opposite the name of each, as provided in the contract, and totaling $17,000. The will further provides:

" All the rest, residue and remainder thereof, including any of the foregoing legacies which may fail to take effect by reason of lapse or otherwise unto EDNA F. BALDWIN.

" If said property shall not be sufficient to pay the general legacies above set forth in full, then I direct that all of the aforesaid legacies shall abate proportionately."

By the third paragraph of the will testatrix gave, devised and bequeathed all the rest, residue and remainder of her property, " including any portion * * * which may or shall be adjudged not effectively bequeathed or devised " by the second paragraph of the will to four individuals, all blood relatives of testatrix's deceased husband.

Testatrix's estate was larger than her husband's and consisted of personal property of the value of $24,199.66 and certain real property owned by her since 1889 and appraised at $3,800. It appears that during her marriage and after her husband's death testatrix was engaged in the dressmaking business.

In November, 1940, the sole surviving executor instituted this proceeding for the final judicial settlement of his account and, incidental thereto, for the construction of the second paragraph of testatrix's will and the contract of May 4, 1925, so as to determine the manner in which testatrix's property was to be distributed. The executor contended below, as he does here, that the contract relates only to the property and assets individually owned by testatrix's husband at the date of his death and does not include or contemplate the trust accounts or joint accounts. Under this construction there would be available for the payment of the contract legacies amounting to $17,000 only the sum of $4,062.68, representing the value of the husband's individually owned property and of his one-half interest in the two mortgages.

Some of the beneficiaries named in the contract filed objections, claiming that in making the contract the testatrix and her husband intended that the former would, and in fact she did agree, to bequeath to the persons named all the property and assets held by the husband at his death whether held jointly with or in trust for testatrix. The net value of these assets for transfer tax purposes was $21,425.68 — more than sufficient to pay the legacies in question.

The learned surrogate construed the will to affect only that property which the testatrix " received through her husband's will which includes half interests in that personal property in their two names without characterization of the nature of the holding, and not to include property which she acquired by reason of the form in which the property was held by the two at the time

of her husband's death." In other words, the surrogate held that the contract did not include the property held jointly or in trust for testatrix. It is from the decree entered in conformity with this construction that four of the beneficiaries named in the contract appeal.

Appellants contend that it was the intention of the testatrix and her husband to include in the property required to be willed by testatrix all of the property she would acquire from her husband upon his death, irrespective of whether such property passed to her under the will or by operation of law. Their argument in support of this contention is two-fold: (1) The language of the contract manifests such an intention; and (2) the testatrix gave a practical construction to the contract, which accords with appellants' claim as to the property it affects.

Respondents urge the contract is clear and unambiguous. I think not. It is not clear what was included within the words, " the properties received from " her husband.

The fundamental rule in the construction of all agreements is to ascertain the substantial intent of the parties. (*O'Neil Supply Co.* v. *Petroleum H. & P. Co.*, 280 N. Y. 50, 55.) The purpose to be accomplished and the object to be advanced may be considered. (*Manson* v. *Curtis*, 223 N. Y. 313, 320.) " The court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby." (*Atwater & Co.* v. *Panama R. R. Co.*, 246 N. Y. 519, 524.)

As heretofore indicated, the contract, after reciting the execution of the will by the husband, contains a covenant by the wife, in consideration thereof, to make a will bequeathing to certain individuals specified therein, relatives of both husband and wife, bequests totaling $19,500 " from the properties received from said Edward L. Sterling." The covenant concludes with the further provision that " All the remainder of the principal as devised to the said Emma C. Sterling shall be given and bequeathed to Edna P. Baldwin and any and all shares of such parties as may have predeceased the said Emma C. Sterling." The surrogate, in construing these provisions, stated that the provision that the wife should by will make the bequests payable " from the properties received from " the husband might, standing alone, include the jointly owned and trust property. The surrogate held, however, that the lawyer draftsman's use of the word " devised " in the subsequent provision requiring the wife to bequeath " All the

remainder of the principal as devised " to Edna P. Baldwin, limited the contract to only such property as passed to testatrix by reason of the will and necessarily excluded all property which became hers by operation of law because she was a joint owner or trust beneficiary of it. This is also the argument of the respondents, particularly the administrator of the deceased executor, who was to receive one-quarter of the testatrix's residuary estate.

I do not agree with such a technical construction of the contract. The surrounding circumstances and the apparent purpose and object of the parties in making the contract in my opinion clearly show that it was the substantial intent of the parties that *all* the property held by the husband, including the jointly owned and trust property, was included in the contract under the phrase, " properties received from " the husband.

The contract recites that the husband by his will left *all* his property to his wife. The moneys deposited in the savings accounts in his own name in trust for his wife were part of all his property. The trusts were merely tentative and revocable at will until the husband died or completed the gift in his lifetime. (*Matter of Totten*, 179 N. Y. 112.) The contract operated as a disaffirmance or revocation of the trusts. Moreover, the contract calls for specific legacies of $19,500, and the parties contemplated that the wife's estate would, as it did, exceed that amount. It is only fair to assume that when the husband provided for these legacies he meant that they should be paid. The record shows that at the time the husband died — eleven months after the contract was made — all his property, including the jointly owned and trust property, was appraised at slightly more than $21,000 net, but that the individually owned property had a value of only slightly more than $4,000. With these figures in mind, it must have been the intent of the parties that all the property held by the husband was to be applied to the payment of the contract legacies and not the individually owned property alone, the value of which falls far short of the amount of the contract legacies. Nor is it without significance that in the transfer tax proceeding the wife, as executrix of her husband's estate, included the jointly owned and trust properties as assets of the estate, and also paid an estate tax upon all the property, thus indicating that the jointly owned and trust properties had been accumulated solely out of her husband's earnings and, therefore, belonged entirely to him. I am mindful of the fact, as pointed out by respondents, that there is no proof that at the time the contract was made the husband did not own property in addition to that which he possessed at his death eleven months later. But it is quite improbable that a

frugal and thrifty man, such as the husband showed himself to be, would or could have disposed of more than $15,000 in the last eleven months of his life. As a matter of fact, the bank accounts show deposits as well as accumulations of interest during this eleven-month period.

I believe the conclusion is irresistible that at the time the agreement was made the testatrix knew what property the husband possessed and considered it all to be his no matter in what form it was held. I think it equally clear that he was desirous of giving his entire property to his wife, but only on condition that she would agree by her will to divide $19,500 of it among the relatives of both in the amounts specified in the contract. If the construction of the surrogate be approved, then it must be held that it was the intention of the parties that the wife was to divide $19,500 among the relatives when there was only $4,000 to divide. I do not believe that the subsequent use in the contract of the word " devised " should be held to operate to defeat the obvious intention of the parties. The surrogate, after emphasizing that the agreement was prepared by a lawyer and, therefore, must be construed more strictly than if it had been drawn by a layman, points out that the word " devise " is a technical word and refers to real property passing under a will. But the lawyer who drew this agreement was not a skillful or careful draftsman because he used the word " devised " when the contract referred only to personal property.

Appellants also urge that testatrix gave to the contract a practical construction, which is in accord with their claim that the jointly owned and trust properties were included in the contract.

The surrogate held that the rule of practical construction may not be invoked. While I believe that the rule would be applicable in this case, in my opinion the evidence relied upon by appellants is insufficient to show that by her acts and conduct the testatrix gave a practical construction to the contract.

The decree should be reversed on the law, with costs to all parties filing briefs, payable out of the estate, and the matter remitted to the Surrogate's Court for the entry of a decree in accordance with this opinion.

LAZANSKY, P. J., CARSWELL, TAYLOR and CLOSE, JJ., concur.

Decree of the Orange County Surrogate's Court reversed on the law, with costs to all parties filing briefs, payable out of the estate, and the matter remitted to said Surrogate's Court for the entry of a decree in accordance with the opinion of JOHNSTON, J.