Fuchsberg, J.
(dissenting). Adopting, as we must, the affirmed findings that the defendant’s offer of fringe benefits ripened into a binding contract and that the "New Car Salesman’s Plan” (hereinafter Plan) correctly describes its terms, the interpretation of that contract presents a question of law on the basis of which I believe the order of the Appellate Division should be reversed and the complaint dismissed. The reasons for this conclusion are spelled out by the now undisputable facts, which include the contract in this case (Brown Bros. Elec. Contrs. v Beam Constr. Corp., 41 NY2d 397, 400; Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., 32 NY2d 285, 291).
Plaintiff is a car salesman. In 1972 he was employed as such by defendant, a family-owned corporation in the business of selling new and used automobiles. In March of that year, during a meeting it called primarily to announce sales prices and commission rates on its various motor vehicles for the forthcoming year, the defendant took the occasion, on its own initiative and not in response to any demand by the employees, to advise them that it would henceforth provide certain fringe benefits, including life insurance, temporary disability insurance and total disability insurance.
It must have been clear when they were presented, that these benefits would be payable pursuant to the terms of policies of insurance purchased by the employer, since a representative of the insurance carrier was introduced at the meeting and then and there distributed individual insurance applications for completion by each of the employees. Some time thereafter, on June 1, 1972, the employer mailed each *664 employee a copy of the so-called Plan, which was in the form of a pamphlet it prepared without any professional assistance and which the trial court later found to contain the substance of the information on this subject that it had communicated orally at the meeting.
The trial court, focusing on the Plan alone, held that, since it was promulgated by the defendant, ambiguities were to be resolved in favor of the plaintiff, and therefore, that it must be read to impose an unconditional obligation for payment of the stated amount of total disability on the employer itself.
That analysis, I respectfully suggest, does not give sufficient consideration to whether the Plan, fairly read, is to be construed as incorporating by reference the contents of the insurance policy. Bearing in mind the undisputed circumstances of the Plan’s issuance, there is a wealth of language, logic and common sense to support a reading that is in harmony with the provisions of the policy.
It must be remembered that the Plan was voluntary and not the result of collective bargaining or other arm’s length negotiation; the whole tenor of the occasion of its offer was one of welcome acceptance of whatever the employer proffered on the matter of disability coverage. Furthermore, examination of the Plan reveals that the portion containing the disability provision and other fringe benefits is, both physically and substantively, a relatively incidental part of its contents. In the main, the document deals with unrelated matters such as pricing and current earnings, manifestly the chief concern of the parties at the time.
To treat the Plan as though it created an independent contractual obligation on the employer beyond its procurement of the policy of which it had advised its employees is, therefore, in my view, to give it a strained interpretation. As the plaintiff well knew, his employer was not in the insurance business, but engaged solely in the conduct of an automobile dealership. The Plan’s précis description of the disability benefits would hardly have been the medium for setting forth the customary exclusions which even laymen of little sophistication expect to find in insurance policies (cf. 30 NY Jur, Insurance, § 1093). All the more is this so in the case of the plaintiff and his fellow automobile salesmen, who would be especially alert to such matters; insurance binders and transfers of policies, albeit only with respect to automobiles, were *665 part and parcel of the routine of almost any sale one of them would close. Indeed, the Trial Judge concluded that plaintiff "had to understand that insurance was part of the Plan”. When the representative of the insurance company was introduced at the March meeting, it was as the "agent for Union Mutual Insurance Company, who is the company that [is] going to insure our [disability] salary continuation program”. And, directly above his signature on the application plaintiff signed on that occasion, appear the following words: "I hereby apply to Union Mutual Life Insurance Company for group insurance as presented to me”.
The words in which the other benefits of the Plan are described also make evident that reference to other documents, especially the applicable insurance policies, is required if the Plan is to be fully comprehended. Thus, the life insurance policy is termed "basic” and "additional” and the medical payments coverage as Blue Cross and Blue Shield "basic benefits”. It is in the context of a document that suggests such a general scheme of incorporation by reference of other documents that the provision of the Plan at issue must be read (cf. Empire Props. Corp. v Manufacturers Trust Co., 288 NY 242, 248 [Lehman, J.]). And, as to the construction of ambiguities, if ambiguities can here be said to exist, the general rule resolving them against the draftsman can hardly be applied with sufficient force to tip the scales against the defendant under the circumstances which gave rise to the agreement in this case (Atwater & Co. v Panama R. R. Co., 246 NY 519, 524).
Finally, the disability policy provision which concerns us here is not in conflict with either the language or spirit of the Plan. The exclusion it effected was one which almost invariably is part of such insurance and there is nothing to indicate that this plaintiff was in any way misled because the policy’s clause was not repeated directly in the Plan. Indeed, for the defendant to have intended to assume an all-embracing, retroactive responsibility for all its employees’ unnamed past disabilities would have been most extraordinary. Even an insurance carrier might not find it possible to weather the financial storm that could result from an imposition on it of so broad-sweeping and unanticipated a liability. Much less is an employer, especially one with a limited number of employees among whom to spread the risk, to be so lightly deemed to have intended any such onerous and open-ended obligation *666 rather than one limited by a fixed and actuarially ascertainable premium.
Order affirmed, etc.