Jones Apparel Group, Inc. v Polo Ralph Lauren Corp. (2004 NY Slip Op 50464(U))

[*1]

Jones Apparel Group, Inc. v Polo Ralph Lauren Corp.

2004 NY Slip Op 50464(U)

Decided on March 15, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 15, 2004

Supreme Court, New York County
JONES APPAREL GROUP, INC., and 
JONES INVESTMENT CO., INC., 

 Plaintiffs,
 
 -against- 

POLO RALPH LAUREN CORPORATION, 
PRL USA, INC.,
THE POLO/LAUREN COMPANY, L.P., and
JACKWYN NEMEROV,

 Defendants.
601736/03

Richard B. Lowe, J.
Motion sequence numbers 601763/03-001 through 003 are consolidated for disposition.
Motion sequence 001 and 002 are addressed to Action #1. In motion sequence 001, defendant Jackwyn Nemerov moves, pursuant to CPLR 7503, to compel arbitration of plaintiffs' claims against her, and to stay those claims in Action #1 against her, pending such arbitration. In motion sequence 002, defendants Polo Ralph Lauren Corporation, PRL USA, Inc., The Polo/Lauren Company, L.P., and Jackwyn Nemerov (together Polo) move, pursuant to CPLR 3211 (a) (1) and (a) (7), to dismiss the first cause of action against Polo, and pursuant to CPLR 2201, to stay the third cause of action, pending arbitration of plaintiffs' claim against defendant Jackwyn Nemerov. In motion sequence 003, which relates to Action #2, defendants Jones Apparel Group, Inc. and Jones Investment Co., Inc. (together Jones) move, pursuant to CPLR [*2]3212, for summary judgment dismissing the complaint. Polo cross moves, pursuant to CPLR 2215 and 3212, for summary judgment in favor of plaintiffs.
Jones Apparel Group, Inc. (Jones Apparel) designs, manufactures, and markets apparel, footwear and accessories. It sells clothing under a number of nationally recognized brands, including Jones New York, Evan-Picone, Rena Rowan, and Nine West. Jones Apparel also designs, manufacturers and sells clothing under trademarks owned by the Polo Ralph Lauren Corporation.
Polo is the publicly held business of designer Ralph Lauren. In 1995, Jones Apparel, and its subsidiary, Jones Investment, Co., Inc., entered into a series of four agreements with Polo, by which Jones obtained the exclusive rights within the United States and Canada to produce lines of clothing under several labels, including the "Lauren" label (the Lauren Agreements). The Lauren Agreements include two license agreements, one pertaining to the United States and the other pertaining to Canada; and two associated "design service agreements," one for the United States and the other for Canada. Jones Apparel is party to the licensing and design service agreements pertaining to the United States, and Jones Investment is party to the licensing and design service agreements pertaining to Canada. Each of the four Lauren Agreements permits Polo to terminate it in the even of specified default conditions, such as Jones' non-payment of royalties or Jones' bankruptcy. The Lauren Agreements also contain "cross-default" provisions, whereby a default under the license agreement would trigger a default under the design services agreement, and vice versa. In addition, the Lauren Agreements contain provisions providing that a default under the United States agreements would trigger a default under the Canada agreements.
The Lauren Agreements also have analogous "cross-expiration provisions." Under these provisions, the expirations of the United States license agreement would result in the expiration of the United States design services agreement, and the expiration of the Canada license agreement would result in the expiration of the Canada design services agreement, and vice versa. Under another section, the expiration of the United States license agreement would result in the expiration of the Canada license agreement.
However, while the cross-default/expiration provisions in the Lauren Agreements provide that a default or expiration of either of the United States agreements results in a default or expiration of the Canada agreements, the reverse is not provided for. Thus, a default under, or expiration of, any of the Canada agreements does not trigger a default under, or expiration of, the United States agreements.
As originally executed in 1995, the terms of the Lauren Agreements ran through December 31, 2001. However, those agreements gave Jones the option to extend them for an additional three years, through December 31, 2004, if sales of the Lauren lines met specified minimum sales levels during 2000. The lines of clothing Jones Apparel designs and produces for Polo have been extremely profitable. Jones' sales of Lauren clothing within the United States and Canada accounted for well over $500 million in sales during both 2001 and 2002.
Jones alleges that in 1998, Polo approached Jones with the proposal that Jones and Polo enter into licensing and design services agreements with respect to a new line of clothing to be aimed at younger women. The line would be marketed under the "Ralph/Ralph Lauren" or Ralph by Ralph Lauren" label (the Ralph Line). As with the Lauren line, the Ralph line would be [*3]designed and manufactured by Jones.
Jones agreed, and on May 11, 1998 Jones and Polo executed four license and design agreements for the Ralph Line (the Ralph Agreements). The Ralph Agreements include two license agreements, with respect to products bearing the "Ralph/Ralph Lauren" trademark in the United States and Canada, respectively, and two design services agreements, with respect to Ralph products in the United States and Canada, respectively.
On that same day, the parties also executed a "Cross-Default and Term Extension Agreement." Jones contends that to compensate Jones for the risk associated with agreeing to take on this new, untested venture, Polo agreed to extend the renewal terms of the Lauren agreements by two years, such that the agreements, once renewed, would not expire until December 31, 2006, rather than December 31, 2004, as provided for under the Lauren Agreements. The Cross-Default and Term Extension Agreement provides, in part as follows:
1. In the event the term of the Lauren License is renewed in the manner set forth in paragraph 8 thereof, the "Renewal Term" (as defined therein) shall expire on December 31, 2006 instead of December 31, 2004, and the term of the Lauren Design Agreement shall be similarly extended in accordance with its terms.
2. In the event the term of the Lauren Canada License is renewed in the manner set forth in paragraph 8 thereof, the "Renewal Term" (as defined therein) shall expire on December 31, 2006 instead of December 31, 2004, and the term of the Lauren Canada Design Agreement shall be similarly extended in accordance with its terms.
3. Any Event of Default under any of the above-referenced agreements shall constitute an Event of Default under all of the above-referenced agreements, and except as may otherwise be agreed upon in a writing signed by the relevant parties, the termination or expiration of any of the above-referenced agreements shall result in the simultaneous termination or expiration of all of the above referenced agreements.
Sales of the Lauren line for the year 2000 met the minimum levels specified for renewal in paragraph 8 of the Lauren Licenses. Accordingly, in 2001, Jones exercised its option to extend the terms of the Lauren Agreements through December 31, 2006, as provided by the Cross-Default and Term Extension Agreement.
However, sales under the Ralph label were not as successful. Those sales fell below the minimum levels that would allow renewal of those agreements beyond December 31, 2003. By letter dated December 6, 2002, Polo took the position that, by virtue of the third sentence of the Cross-Default Agreement, the expiration of the Ralph Agreements automatically triggered the expiration of the Lauren Agreements, and that the Lauren Agreements would, therefore, expire on December 31, 2003. Polo asserted that the term "above-referenced agreements" in the third sentence of the Cross-Default Agreement refers not only to the Lauren Agreements, but also to the agreements referenced in the recitals. Those recitals list, in a "whereas" clause, all of the agreements that Jones and Polo were parties to. On December 16, 2002, Jones wrote a letter to Polo, rejecting Polo's interpretation of the Cross-Default Agreement. In early June 2003, Jones and Polo each commenced action against the other.
[*4]The Claims against Jackwyn Nemerov Defendant Jackwyn Nemerov is the former President and Chief Operating Officer of Jones Apparel. Jones alleges that, during 2001, Nemerov, was unhappy with a reorganization of senior management at Jones, and began surreptitiously collecting certain confidential information relating to the Lauren line. In March 2002, upon the announcement of a new Chief Executive Officer, Nemerov resigned from Jones Apparel. Pursuant to her employment agreement, Nemerov's then outstanding stock options became fully vested and she became eligible to collect her full salary and bonus, amounting to $410,000 monthly, through June 30, 2004. Nemerov's employment agreement provided that, during this time, she was obligated not to engage in activities competitive with Jones Apparel. Jones alleges that, despite the provisions of her employment agreement, Nemerov took the documents and things containing confidential and proprietary information that she had gained access to while she was president of Jones Apparel, and that, upon information and belief, Nemerov has been consulting for Polo concerning the design, manufacture and marketing of the Polo brands currently licensed to Jones.
In Action #1, Jones alleges causes of action against Polo for breach of the Lauren Agreements (first cause of action), and for tortious interference with Nemerov's employment contract (third cause of action). As against Nemerov, Jones alleges causes of action for breach of the employment agreement (second cause of action), tortious interference with the Lauren Agreements (fourth cause of action) and conversion (fifth cause of action).
In Action # 2, Polo seeks a declaratory judgment that the Lauren Agreements terminate as of December 31, 2003, and that after that date all rights granted to Jones in the Lauren Agreements revert to Polo. Polo also seeks an injunction, preventing Jones from any use of the rights granted in the Lauren Agreement.
The Motion to Dismiss and the Motion and Cross Motion for Summary Judgment
Polo contends that the Lauren Agreements have expired based upon a reading of the term "above-referenced agreements" in the third sentence of the Cross-Default And Term Extension Agreement. Polo asserts that "above-referenced agreements" includes not only the four Lauren Agreements, which are the subject matter of the operative part of the agreement, but also to the four Ralph Agreements, which appear in the recitals. Jones contends that the Cross-Default and Extension Agreement was intended to do two things: (1) to extend the expiration of the Lauren Agreements, and (2) to provide that if there were a default in the Canada agreements, the US agreements would expire as well.
 It is well settled that the issue of whether an agreement is ambiguous is a question of law for the courts (W.W.W. Assocs., Inc. v Giancontieri, 77 NY2d 157 [1990]). Ambiguity is to be determined by looking within the four corners of the document and not to outside sources (Estate of Stravinsky v Schott Musik Intl. GmbH & Co., ___ AD2d ___, 770 NYS2d 40 [1st Dept 2003]). As a matter of basic contract law, the Cross-Default and Term Extension Agreement is not ambiguous. The operative portion of the agreement lists only the two United States Lauren Agreements and the two Canada Lauren Agreements. The recitals of a contract indicate only the background, and ordinarily form no part of the real contract (22 NY Jur 2d Contracts § 256, at 314 - 15). Where the recital in an agreement is so inconsistent with the covenant or promise that they cannot be harmonized, the latter, if unambiguous, must prevail, because it is the most [*5]important (id).
Further, in interpreting a contract "[t]he court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed" (William C. Atwater & Company, Inc. v Panama Railroad Co., 246 NY 519, 524 [1927]). Here, given the relation of the parties, its strains credulity that Jones would risk continuation of its very profitable Lauren line on the success of an untried new line. Further, given that the parties had agreed to extend the expiration dates of the Lauren line, possibly as consideration for entering into the new Ralph line, it would make no sense for them to simultaneously provide for expiration of that profitable line.
Therefore, as to motion sequence 002, Polo's motion to dismiss the first cause of action is denied. As to motion sequence 003, Jones motion to dismiss the complaint in Action #2 is granted. Polo's cross-motion for summary judgment in its favor is denied.
The Motion to Stay Arbitration
Nemerov's employment agreement with Jones, dated July 1, 2000, provides in part, as follows:
15. Arbitration. Except as otherwise provided herein, all controversies, claims or disputes arising out of or related to this Agreement shall be settled under the rules of the American Arbitration Association then in effect in the State of New York, as the sole and exclusive remedy of either party, and judgment upon such award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction.
(Glynn Aff., Ex A) However, the employment agreement continues, and provides that:
17. Miscellaneous.
(a) Given that a breach of the provisions of this Agreement would injure the Company irreparably, the Company may, in addition to its other remedies, obtain an injunction or other comparable relief restraining any violation of this Agreement, and no bond, security or other undertaking shall be required of the Company in connection therewith. * * *
(d) This Agreement shall be governed by and construed in accordance with the laws of the State of New York (other than its choice of law rules), where it has been entered and where it is to be performed. The parties hereto consent to the exclusive jurisdiction of any federal or state court in the State of New York to resolve any dispute arising under this Agreement or otherwise.
An express arbitration in a contract which provides for arbitration of any claims arising thereunder is not negated by an additional clause vesting the courts of the state with jurisdiction in all actions and proceedings (Isaacs v Westchester Wood Works, Inc., 278 AD2d 184 [1st Dept 2000]. The jurisdiction provision sets forth the required venue of applications to compel arbitration, or confirm or reject arbitration awards (id). Further, there is a strong public policy favoring arbitration.
Nemerov is entitled to have those disputes relating to her contract arbitrated. Therefore, Jones and Nemerov are directed to proceed to arbitration as to Jones' second cause of action for breach of Nemerov's employment contract, and the fifth cause of action for conversion. Jones' fourth cause of action, which is asserted against Nemerov for tortious interference with the [*6]Lauren Agreements does not arise out of Nemerov's employment agreement and shall be tried with the remaining claims against Polo. Pending arbitration, Jones' second and fifth causes of action shall be stayed.
Accordingly, for the foregoing reasons, it is
ORDERED that, in Action # 1, defendant Nemerov's motion to compel arbitration and to stay the action is granted only to the extent that Jones and Nemerov are directed to proceed to arbitration on Jones' second and fifth causes of action, and those causes of action are stayed pending arbitration; and it is further
ORDERED that, in Action #1, defendant Polo's motion to dismiss the first cause of action, and to stay the third cause of action is denied as to that portion of the motion to dismiss, and is granted only to the extent that the third cause of action is stayed pending arbitration between Jones and Nemerov; and it is further
ORDERED that the remainder of the action is severed and shall continue; and it is further
ORDERED that, as to Action #2, the motion by Jones for summary judgment is granted and the complaint is dismissed; and it is further
ORDERED that the cross motion by Polo for summary judgment is denied; and it is
ORDERED that the clerk shall enter judgment accordingly.
Dated: March 15 , 2004ENTER:
__________________________________________
J.S.C.